FALTER et al. v. REINHARD et al.

(District Court, S. D. Ohio, E. D.    September 28, 1900.)

No. 374.

1. BANKRUPTCY—APPOINTMENT OF TRUSTEE—UNDUE INFLUENCE OF BANKRUPT.
   It is the policy of the law and the courts to have the affairs of bankrupts administered by a trustee, who will have in view the interests of the creditors only, and not those of the bankrupts or their friends, and the election of a trustee should not be approved where it was accomplished by the vote of an attorney in fact holding proxies obtained from creditors through the solicitation of the bankrupts, and against the votes of a large majority of the other creditors.

2. SAME—REFEREE—REFUSAL TO RECOGNIZE PROXIES.
   Ordinarily a creditor whose claim has been allowed should be permitted to vote for trustee in person or by proxy, and any question as to whether his vote was improperly influenced should be reserved until the referee is called upon to approve the election; but where a referee refused to receive the votes of an attorney holding proxies because it was shown that they had been given at the solicitation of the bankrupts, and in the interest of their choice for trustee, and a different trustee was elected by a large majority of the votes cast by the creditors present, such election will not be set aside at the instance of the bankrupts, where one or two only of the creditors whose votes were refused join in the objection, and whose votes would not be sufficient to change the result.

3. SAME—OBJECTION TO ACTION OF REFEREE.
 An attorney in fact, who was refused the right to vote for a trustee on proxies obtained from creditors, has no interest or standing which gives him a right to object to the action of the referee on behalf of his principals.

In Bankruptcy. On petition for review of certain orders of the referee made in the course of proceedings for the election of trustee.

T. E. Steele, for plaintiffs.
D. B. Sharp, for defendants.

THOMPSON, District Judge. The petition is filed by John F. McGill, a creditor of the bankrupts, and August Neydon, who claims to represent 240 other creditors of the bankrupts. The creditors whom he claims to represent are not parties to this proceeding, nor does it appear that they have authorized Neydon to represent them. Neydon is not a creditor, and has no interest in the controversy, and is not a proper party. He was the attorney in fact of 241 creditors, including McGill, authorized by letters of attorney to vote for them in the election of a trustee, and complains that his letters were rejected, and his right to vote thereunder was denied, by the referee; but, if any one was prejudiced by this action of the referee, it was the constituents, and not their attorney.

The questions arising upon the rulings and action of the referee, as shown by the certificate, are:

"(1) Whether or not a referee presiding at the first meeting has power to hear and determine the question of the right of a creditor's proxy to vote for the choice of trustee upon his offer to vote, and the same being challenged by other creditors.

"(2) If a referee has such power, whether or not a creditor's proxy, who, under authority of a special letter of attorney, offers to vote at the creditors' meeting for the choice of trustee, shall, upon objection thereto by other creditors, be permitted to vote, when such letter of attorney has been obtained by interference of the bankrupt, and the casting of such vote will result in the appointment of a trustee who is the choice of the bankrupt."

It appears from the certificate that, when Neydon offered to vote as the proxy of the creditors, the vote was challenged by other creditors, upon the ground that his letters of attorney were procured through the influence and efforts of the bankrupts, for the purpose of controlling the election of the trustee. Thereupon the referee, after hearing the evidence offered by the parties, sustained the challenge, and refused to permit Neydon to vote, who, if permitted to vote, would have cast the votes of the creditors for whom he was proxy in favor of Walter Zinn. One hundred and eighty-nine votes were cast, representing allowed claims amounting to $103,126.11. Of these, Fred C. Rector received 173 votes, representing allowed claims to the amount of $87,697.79, and was declared to be the choice of the creditors for trustee, and his election as such was approved by the referee. The two hundred and forty-one rejected votes represented allowed claims to the amount of $73,850.13. The evidence heard by the referee, and which is certified here, shows conclusively that Walter Zinn, who, as receiver of this court, was in possession of the property of the bankrupts, was a candidate for trustee, and was the

choice of the bankrupts; that Neydon was an employé of the bankrupts; and that the letters of attorney were procured through the efforts and influence of the bankrupts and the receiver. A letter was sent to the creditors, of which the following is a copy:

"Established, 1868.

"Reinhard & Co., Bankers.    John G. Reinhard, Cashier.

"Columbus, O., August 11, 1900.

"Please call at the bank with your bank book and certificates of deposit at your earliest convenience, not later than August 20th. It is necessary for you to make affidavit to the amount of your claim. We have made arrangements to have the same done without expense to you. We also wish to talk with you about the affairs of the bank.

"Very truly yours,            Reinhard & Co."

In response to this letter, a great many creditors called at the bank, where they found Fairbanks, the attorney of the receiver, Neydon, a clerk of the bankrupts, Gale, a notary public, and, usually, one of the Reinhards. Here their proofs of claim were prepared, and they were sworn by Gale. They were then importuned, in the language of Neydon, to give their proxies to Neydon to enable him to vote for Zinn, who was represented to them as a suitable man, and one whose election would be not only in their interest, but in that of the Reinhards. The proxies which were rejected were procured in this way, and represented the choice of the bankrupts and the receiver, and not the free and unbiased choice of the creditors who gave them; and had these votes been cast and counted for Zinn, resulting in his election as trustee, it would have been the duty of the referee to have ordered a new election. The investigation of the affairs of bankrupts should be conducted in the interest of the creditors and by those who have no other interests to serve. The investigation of preferential or fraudulent transfers of the property of the bankrupts should be made by a trustee who will have in view the interest of the creditors only, and not the interest of the bankrupts or of their friends.

Ordinarily, the creditor whose claim has been allowed should be permitted to vote in person or by proxy, and any question as to whether his vote has been improperly influenced should be reserved until the referee is called upon to approve the election, when the parties can be fully heard and a new election ordered, if it appear that the creditors have been prevented from exercising a free and unrestricted choice. But the creditors who were represented by Neydon are not here complaining. Notwithstanding the publicity which has attended this contest, but one creditor has appeared and made complaint, and the attorneys prosecuting this proceeding do not claim to represent but a very few in number of those who gave letters of attorney to Neydon. The evidence shows that some of these letters of attorney were given reluctantly, and the indifference of others may be presumed from their failure to complain. Other than that of McGill, whose vote would not change the result, the only interests represented here are those of the bankrupts and the receiver.

There was a fair expression of the choice of those creditors who took sufficient interest in the election of the trustee to attend the meeting and cast their votes, and in the absence of direct complaint

from the others, and a showing which would give them a standing in court, the election which was made should not be set aside at the instance of the bankrupts and the receiver. The receiver was the choice of the bankrupts and the beneficiary of their favor in securing the proxies which were rejected, and should not be elected trustee. His election under such circumstances would be opposed to the policy consistently enforced by the courts, which forbids that the choice of the creditors should be unduly influenced or controlled in the interest of the bankrupts. Aside, however, from the question of policy, there could be no objection to Mr. Zinn. He is a reputable citizen, and a business man of acknowledged ability, whose competency for the position is not questioned. For the reasons given, the rulings and orders of the referee complained of will be approved and confirmed.