## In re CALLAHAN.

## In re WILSON.

### (Circuit Court of Appeals, First Circuit. May 8, 1917.)

### No. 1261.

BANKRUPTCY ☞123—ELECTION OF TRUSTEE—RIGHT TO VOTE—PROXIES.

> Where the District Court specifically found that proxies solicited by P. were solicited by B., a creditor, thereby necessarily finding that P. was B.'s agent, and not the agent of the bankrupt, and there was no finding that they were procured in the interest of the bankrupt, or that the holders of the proxies were in any way subject to the bankrupt's control or direction, the proxies were properly voted, though the referee had disapproved B.'s election as trustee on the ground that there was some sort of an arrangement between him and the bankrupt.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 303, 308, 311.]

Petition for Revision of Proceedings of the District Court of the United States for the District of Massachusetts, in Bankruptcy; Jas. M. Morton, Jr., Judge.

In the matter of Frank E. Wilson, bankrupt. On petition to revise by Vaughn Callahan. Decree affirmed.

A. K. Cohen, of Boston, Mass. (Herman A. Mintz, of Boston, Mass., on the brief), for petitioner.

William T. Atwood, of Boston, Mass., for respondent.

Before DODGE and BINGHAM, Circuit Judges, and ALDRICH, District Judge.

BINGHAM, Circuit Judge. This is a petition to revise in matter of law the action of the District Court and of the referee in bankruptcy approving the election of Guy A. Ham as trustee of the estate of the bankrupt Wilson. The contentions of the petitioner are that the court erred in ruling: (1) That Ham received the vote of a majority in number and amount of creditors whose claims were proved and allowed and who were entitled to vote for trustee; (2) that Bridge, a creditor, was entitled to vote for trustee; (3) that creditors whose claims were solicited by one Peters were entitled to vote for trustee; and (4) that Cohen did not receive the vote of a majority of creditors whose claims were proved and allowed, and who were entitled to vote for trustee.

At the first meeting of creditors two elections were had. At the first, Bridge received the votes of 45 creditors whose claims amounted to $53,701.72, and Cohen the votes of 9 creditors whose claims amounted to $15,140.91. The referee disapproved this election, finding that Bridge was not a proper person to act as trustee because of "some sort of an arrangement" between him and the bankrupt, and ordered a new election. Upon the second election, Ham received the votes of 41 creditors whose claims amounted to $50,599, and Cohen the votes of 9 creditors whose claims amounted to $15,140.91. The claims of 36 creditors amounting to $6,008, which were solicited by Peters, and the claim of Bridge for $35,706, were included in the vote for Ham. Ob-

jections were taken to Bridge being permitted to vote his claim, and to his attorneys, Lincoln & Hemenway, voting the claims of the 36 creditors solicited by Peters. The referee overruled the objections and entered an order confirming the appointment of Ham.

On a petition to review the order of the referee the matter was certified to the judge of the District Court, who confirmed the order, and the case is here on the present petition.

In support of her contentions the petitioner relies largely on the case of In re McGill, 106 Fed. 57, 45 C. C. A. 218, decided by the Circuit Court of Appeals for the Sixth Circuit, January 8, 1901, which is the only decision by a Circuit Court of Appeals that has been called to our attention. In that case it appeared that at the first meeting of creditors, one Neydon, having presented to the referee "241 special letters of attorney, executed by creditors whose claims had been allowed, aggregating in amount $73,860.13, was present at said meeting, and pursuant to these letters offered to vote for Mr. Walter Zinn, to be trustee, the number and amount aforesaid of the claims of creditors represented by the proxies held by said Mr. Neydon; whereupon the said votes, and each of them, so offered by him, were by other creditors present or duly represented objected to and challenged, on the ground that said letters of attorney, and all the votes offered to be cast pursuant thereto, were obtained by the interference of the bankrupt"; that the referee, having heard the evidence, which disclosed that the bankrupts, Reinhard & Co., were bankers, and had been instrumental in sending out letters from their bank to creditors and procuring proxies for the purpose of controlling the election of the trustee, made the following findings of fact:

"I find that the object of the letters sent to creditors by Reinhard & Co. was to have the creditors call at the bank, and obtain their powers of attorney for the purpose of voting by proxy for Mr. Zinn as trustee, and that Mr. Neydon and Mr. Fairbanks were the agents of the Reinhards for the purpose of carrying this object into effect; that the Reinhards had accomplished the object, which, by their letter, was intended to be accomplished, by obtaining the powers of attorney; and that it was the intention of the Reinhards to control the first meeting in the election of a trustee by means of these proxies; and that Mr. Neydon, in offering to vote said proxies, was acting as the agent of the Reinhards, in furtherance of the common design. I further find that, by solicitation, influence, and interference of the Reinhards themselves, and through their agents, Mr. Neydon and Mr. Fairbanks, these proxies had been obtained; and that, * * * while Mr. Neydon was ostensibly the agent of the creditors whose powers of attorney he held, he was in fact the agent of the Reinhards for the purpose of electing a trustee in their interest, and his object in offering to vote under authority of these letters of attorney was to choose a trustee, not for the benefit of the creditors, but in the interests of his real principals, the Reinhards, by whom he was employed."

Having found these facts, the referee sustained the objection and made an order denying Neydon any right to vote the claims on the proxies. On a petition to review the findings and rulings of the referee, the District Court approved and confirmed them; and, on a petition to revise in matter of law, the decision of the District Court was affirmed by the Court of Appeals. It was held: (1) That a referee to whom a case is sent presides at the first meeting of creditors in the place of a judge, and is required to "determine who are entitled

to participate in the meeting as creditors," that a "creditor may include a duly authorized proxy"; that "when the creditor presents his claim the referee has * * * authority * * * to inquire, for the purpose of the meeting, into the claim presented, and to determine that such person is or is not a creditor"; that "when the creditor does not appear in person, but undertakes to qualify another to represent him, * * * the referee may * * * inquire into his status to determine whether he is a duly authorized and lawful attorney in fact"; that "it is a valid objection that one offering to qualify is shown to be the representative of the bankrupt acting under a power of attorney, nominally executed by the creditors, but in fact procured by the bankrupt in his interest, in order to vote his choice for trustee"; and (2) that the authority of the referee to determine the qualifications of the voter is not inconsistent with the right given him to "disapprove the choice of the creditors" after a vote has been taken.

The legal basis for the above conclusions, as stated by the court, was that "it is the policy of the law to secure a trustee who is the selection of the creditors and not of the bankrupt"; and that, while proxies for voting claims appear to confer authority to act in the interest of the creditors, the circumstances attending their procurement may be such as to show that they were in fact procured for the purpose of being voted in the interest of the bankrupt, in which case they should be rejected.

In the case before us, it is not found that the proxies, for voting the 36 claims to which the petitioner objects, were procured by the bankrupt, with the purpose of voting them in his interest; and the order of the referee and the decree of the District Court allowing them to be voted negative such a conclusion, and involve a finding that they were in fact procured in the interest of the creditors. The District Court found specifically that the claims were solicited by the creditor Bridge, which necessarily means that Peters was the agent of Bridge in soliciting them, and the evidence reported warranted the conclusion. There is no finding that Lincoln & Hemenway, who held the proxies and voted the claims, were in any way subject to the control or direction of the bankrupt.

The correctness of the conclusion of the referee that Bridge was not a proper person to act as trustee is not before us, and we regard it as unimportant in view of the findings above stated.

No question is raised as to the propriety of Ham's acting as trustee, provided the powers of attorney from the 36 creditors to Lincoln & Hemenway were duly authorized, and, as it does not appear that they were procured to be voted or were voted in the interest of the bankrupt, the decree of the District Court must be affirmed.

This renders it unnecessary to consider the right of Bridge to vote his own claim; but nothing has been suggested, and we are unable to see, from the findings of the referee, wherein anything transpired that should have prevented him from doing so.

The decree of the District Court is affirmed, with costs in this court to the trustee.