### In re N. S. DALSIMER & CO., Inc.
### No. 52212.

District Court, S. D. New York.
Jan. 22, 1932.

Blau, Perlman & Polakoff, of New York City (Cyrus Levinthal and Charles Seligson, both of New York City, on the brief), for petitioner for review.

Samuel Masia, of New York City, for trustee.

CAFFEY, District Judge.

At a meeting of creditors on November 27, 1931, Sydney Haberman was elected trustee by a majority in number and amount of the creditors participating. A large proportion, apparently substantially all, of the votes for him were cast under powers of attorney held by himself. Seasonable objection was taken to the referee permitting these to be counted. This was put on several grounds. Only one of them will be discussed.

No stenographic minutes of the meeting were certified by the referee. In his opinion, however, he says:

"Objection is further made to the election of Sydney Haberman for the reason that he is attorney-in-fact on the claims he votes, with the exception of the two claims giving power of attorney to Louis Reubenstein and Samuel A. Neuburger, and for the further reason that it was conceded before me that Mr. Haberman himself solicited some of these claims.

"There is nothing in the Act or the General Orders that forbids the solicitation of claims, except when made by the receiver or the receiver's attorney. Therefore, that objection cannot be sustained."

According to my understanding, it was conceded at the argument before me that Mr. Haberman, in advance of the meeting, solicited from creditors generally powers of attorney to himself. Whether or not that be correct, it is indisputable that, with negligible exceptions, all the votes which brought about his election were cast by the candidate personally under proxies, some of which at least came through his own seeking. In his briefs it is said that he "is not an attorney, but is associated with Haberman & Co., who represent a large number of the creditors. * * * Mr. Haberman is associated with Haberman & Co., a collection agency representing a large number of creditors in this proceeding."

Annexed to the referee's certificate there are eleven single sheets, each constituting a proof of debt and a power of attorney, objected to on the ground of alleged defective execution. The trustee's brief also contains a copy. All are on a printed form, precisely alike, having the name and address of Mr. Haberman in the body and on the back.

The power of attorney is as follows:

"The undersigned, of the City of New York, in the County of New York and State of New York, a creditor of the above named bankrupt, does hereby authorize you and each of you to attend the meeting or meetings of creditors of the bankrupt advertised or directed to be held at a Court of Bankruptcy or at such other place and time as may be appointed by the Court for holding such meeting or meetings, or any adjournment or adjournments thereof that may be held and then and there from time to time and as often as there may be occasion for said creditor and in said creditor's name, to vote for or against any proposal or resolution, that may be then submitted under the act to establish a uniform system of bankruptcy throughout the United States, approved July 1st, 1898, and in the choice of trustee or trustees of the estate of said bankrupt and to accept such appointment and with like powers to attend and vote at any meeting or meetings of creditors or sitting or sittings of the Court which may be held therein for any of the purposes aforesaid; also to accept any composition proposed by said bankrupt in satisfaction of said creditor's debt, and receive payment of dividends and money due said creditor under any composition or for the declaration of dividends or for any other purpose in said creditor's interest whatsoever."

It will be observed that the instrument, among other things, authorizes the agent, in behalf of the signing creditor, (1) to attend all meetings of the creditors throughout the course of the administration of the estate; (2) to vote for and in the name of the creditor for or against any proposal or resolution submitted at the meetings; (3) to vote in the choice of trustee or trustees of the bankrupt estate; (4) to accept appointment as trustee; (5) to accept any composition proposed by the bankrupt in satisfaction of the creditor's debt; (6) to receive payment of dividends and money accruing to the creditor under any composition or for the declaration of dividends or for any other purpose in the creditor's interest whatsoever.

It is indisputably shown, therefore, that the trustee obtained his election by procuring through solicitation powers of attorney under which he voted for himself; also that, until the estate is wound up, he is to act in all matters as the representative of the creditors who gave him the powers of attorney.

In the nature of things he became trustee by the favor of principals for whom he continues, and throughout the trusteeship will

continue, to be the agent. In the conduct of his agency, loyalty will demand that, if differences arise among the creditors, he shall take the part of his principals. In consequence, acceptance of the position inevitably carries with it a handicap in serving the entire body of creditors without bias. If the performance of his trust duties should suggest rejection of the claim of one of his principals or pursuit of one of those principals for a preference or any other step adverse to a principal, unavoidably there would arise direct conflict between his obligation to the principal and his obligation to the estate. In these circumstances, should the court approve his appointment as trustee?

The face of the document alone establishes that at any moment the trustee may be required, pursuant to and in the faithful exercise, or in what he deems the faithful exercise, of the authority vested in him by the powers of attorney, to do things in the interest of the group of creditors who have commissioned him that are antagonistic to the interests of other creditors; that, hence, he may be called on to assume a partisan attitude as between two or more groups of creditors, instead of maintaining complete impartiality. It is contrary to sound public policy to permit the creation or the further existence of such a situation. Cf. Weil v. Neary, 278 U. S. 160, 173, 174, 49 S. Ct. 144, 73 L. Ed. 243. Moreover, in order to prevent it, the court, in the discharge of a "paramount duty to see that trusts are properly executed," may remove a trustee of the type described. Cf. May v. May, 167 U. S. 310, 320, 17 S. Ct. 824, 42 L. Ed. 179.

In harmony with the principles declared by the Supreme Court for application to trustees generally, as long ago as 1868 this court held that a candidate for bankruptcy trustee, ipso facto, disqualifies himself for the office by active importunity of the creditors for their suffrages and their proxies. In re Doe, 7 Fed. Cas. page 802, No. 3957; Cf. In re Lewensohn (C. C. A.) 121 F. 538, at page 539. This is in accord with the doctrine on the subject as announced in numerous other districts. In re Scott (D. C.) 53 F.(2d) 89. The minor differences in facts dealt with in the various decisions does not mar the marked uniformity of the guiding consideration which characterizes all of them. If Garrison v. Pilloid Cabinet Co. (C. C. A.) 50 F.(2d) 1035, be thought to look the other way, then it seems to me that it should not be followed.

It is agreed by counsel that participation by the bankrupt, direct or indirect, open or covert, in promotion of a candidacy for trustee, would invalidate the selection of the one advocated. In re Rekersdres (D. C.) 108 F. 206; In re Bloomberg (D. C.) 48 F.(2d) 635, 637. The reason for condemning an election by that means applies equally, though clearly with less force, to an election which results from active solicitation of creditors for proxies to the candidate which he employs to effect his choice. The basis for rejection in both instances has been no better expressed than by Judge Brown in the Rekersdres Case (pages 206–207 of 108 F.), where he says, "A trustee should be wholly free from all entangling alliances or associations that might in any way control his complete independence and responsibility."

It is argued by counsel for the trustee that Bankruptcy Rule 22, adopted in conformity with the January 13, 1930, amendment of General Order XXXIX (11 USCA § 53), directing referees to furnish creditors with blank forms of special proxies to vote their claims in favor of the standing receiver in this district for trustee, and to advise them of the availability of the standing receiver for election as trustee, in certain specified cases, carries with it sanction for anybody to solicit, and to use for his own election, powers of attorney of the kind under consideration. In the first place, as pointed out at the oral argument, if the standing receiver were to do what the trustee in this case did, it would thereby render itself ineligible to election as trustee. In the second place, Rule 22 was promulgated pursuant to explicit authorization by the Supreme Court of the United States and with the approval of the circuit judges for the Second circuit; what this court has prescribed is action by the referees in their official capacity; the very limitations expressed and the careful way in which the notice is restricted, in and of themselves, impliedly negative the notion that the rule countenances solicitation in his own behalf of proxies by every candidate for trustee.

If the practice pursued in the instant case were treated by the court as warrantable, I think there would be serious danger of the recurrence of evils whose prevalence for a time in this district resulted in waste of or injury to estates, and whose eradication imposed a grave problem for the consideration of the court. For the protection of creditors, as well as for the purposes of maintaining confidence in the court and avoiding repetition of the chagrin which reputable lawyers had to endure three years ago, it seems to me that, as matter of public policy, the stamp of

disapproval should be put upon solicitation of creditors by candidates who seek powers of attorney in the way and of the type we are now dealing with.

The court cannot shut its eyes to what is general knowledge or to what it has ascertained by adequate inquiry. The theory of the Bankruptcy Act (11 USCA) is to endow creditors with the privileges of electing trustees and of deciding numerous other matters. Nevertheless, they are notoriously inert. Failure on their part to share in the conduct of the business increases the burden on the court. In its effort the court is compelled, particularly in a crowded district like this, to pursue a course which, with due deference to the rights of creditors, takes into account their lethargic habits and what investigation has demonstrated to be the facts. The court feels that it would be recreant to its responsibility if it lent recognition to a method, such as is illustrated in this case, whereby, through importunity of creditors, the plan of the court itself so to administer the statute as to assure them as a body, in so far as practicable, equality and efficiency, would be frustrated, or there would be peril of a reinstatement of devices which, in addition to being impositions on the creditors themselves, brought bankruptcy administration into disrepute. With respect to contracts which placed a party to them on diametrically opposed sides at the same time, Chief Justice Taft aptly said, "What is struck at in the refusal to enforce contracts of this kind is not only actual evil results but their tendency to evil in other cases. * * * Enforcement of such contracts, when actual evil does not follow, would destroy the safeguards of the law and lessen the prevention of abuses." Weil v. Neary, at pages 173–174 of 278 U. S., 49 S. Ct. 144, 149. So here, this court, through ample evidence, having informed itself of what is essential in order fairly to administer the great volume of bankruptcy estates committed to its care, should flatly and emphatically refuse to approve any practice which inherently involves strong tendency toward return to a previously condemned vicious condition.

The record does not fully reveal the extent to which the estate has been administered since the trustee was elected. By brief he says that it has progressed materially. On that account there should be care to avoid a hiatus between his elimination and the inauguration of a substitute.

The referee's order of November 27, 1931, is reversed, and in the exercise of its supervisory function [In re Leader Mercantile Co. (C. C. A.) 36 F.(2d) 745] pursuant to General Order XIII (11 USCA § 53), the court disapproves the election of Mr. Haberman and removes him from the office of trustee, the removal to take effect upon the qualification of his successor.

At present there is no need of passing on the other issues raised.

Settle order on two days' notice.