## RINDERKNECHT et al. v. TOLEDO ASSOCIATION OF CREDIT MEN et al.
### No. 1222.

District Court, N. D. Ohio, W. D.
June 25, 1935.

Supplemental Opinion Jan. 13, 1936.

556

Doyle & Lewis, William B. Devlin, and Edward Rinderknecht, all of Toledo, Ohio, for plaintiff.

Williams, Eversman & Morgan, of Toledo, Ohio, for defendant.

KILLITS, District Judge.

Plaintiffs constitute a committee from the Toledo Bar Association, by the latter empowered to bring this action. The parties are properly aligned in the title save for personnel changes which have occurred since the action was begun in November, 1931. The case has lain in our records, with casual interlocutory interruptions of its repose, pending the determination of analogous cases in the state courts.

The defendant, the Toledo Association of Credit Men, which (including its active personnel) will be hereinafter referred to as the association, is a voluntary organization, with objectives well known in commercial circles, and, as such, is a member of a national organization of the same character, with subsidiaries in most, if not all, of the important cities of the country. In its activities the association co-operates with the national association as a whole, and with individual component members of the latter.

Broadly, the question herein involves the right of the association to appear before our referees in bankruptcy; the chal-

lenge being specifically raised as to alleged activities designated 'in the bill as practices at law, to which allusion will hereinafter be made.

The parties hereto were also parties to an analogous action in the state court, in which a permanent injunction was allowed and entered.

Generally, but not always, respecting the qualifications to practice before it, or in the court of the referee in bankruptcy, this court is disposed to follow the state courts and, were it worthwhile, we would be inclined to adopt, as our judgment herein, the terms of some of the specific restrictions upon the association embodied in a state court order in the cause referred to.

While the action was pending in the state court, and under the challenge of the bill here, the association abandoned in our referees' courts many of its attacked activities.

We think this was wise, and we must consider that the action was equivalent to an admission that, to the extent of the dropped activities, suit was justifiably begun. No technical questions have been advanced respecting jurisdiction, capacity to sue, and so forth.

We confine our consideration herein, therefore, to those activities of the association before the referee continuing to the present time and since the abandonment. Through admissions, concessions, and limitations of testimony, the fact situation, upon which the parties are now disputing, raises but the question whether the association is engaging in the practice of law, when doing any or all of the following:

(1) Notifying persons, firms, or corporations of their listing, as severally unsecured creditors, in a schedule in bankruptcy in our court, whether or not such creditors are members of defendant association.

(2) Sending to those so notified the approved form to be used in proving claims.

(3) Offering the services of the association in presenting proofs of claim; participating in the election of a trustee, furnishing, to be executed by the creditors, respectively, so notified, the approved forms of proof of claim and of power of attorney; suggesting the name of some person assumed by the association to be suitable as attorney in fact.

(4) Using the powers of attorney so obtained, or otherwise, in the election of a trustee, who may be a member or even an officer of the association.

(5) Collection, for a prescribed and reasonable fees, for the use of the association, dividends on the proven and allowed claims, representation of which was so obtained.

(6) Applying, with the consent of the trustee, to the uses of the association any or all of the fees of a trustee, whose election is secured by the association through the use of the powers of attorney obtained in the manner above stated.

Several considerations must be entertained by the court under the power of judicial notice, or as part of the pertinent law, which serve very materially to guide the judgment of the court in answering the question before it.

■ The first is an important, but too often neglected, element of the raison d'etre for the Bankruptcy Act (11 U.S.C.A.), i. e., to set up provisions for expeditious, economical, and just administration of the estate of an *honest* insolvent; a controlling purpose of which notice should always be taken.

Second, the place in business economy of an agency such as an association of credit men, whose objects are those professed by the defendant here. The usefulness of such an institution functioning honestly in promoting the threefold object of the law just referred to is obvious to any District Judge of much experience. Apathy of creditors, who have not only a primary but controlling interest in the administration of a bankruptcy cause before a referee or a court, is a very fruitful cause for abuses of the law, ending, sometimes, in serious frauds and discharges of unworthy insolvents. In many cases a more just administration would be applied, at least with less trouble, and most improper discharges would be prevented, were this not so. In re N. S. Dalsimer & Co. (D. C.) 56 F.(2d) 644, 647.

■ Any agency which may serve to stiffen a critical attitude in creditors, individually or collectively, and to encourage an effort to aid the referee or court to reach the result which the law contemplates, deserves sympathetic consideration. We think that a presumption is justifiable that such an association, with nation wide co-operating connections, will function reasonably and with a fair degree of disinterestedness. To the extent that weak human nature may en-

ter into the matter to weaken the presumption, the referee is clothed with full supervisory power of correction.

From extensive connection with bankruptcy administration in 18 years of activity in this large commercial district, in both of its divisions, we select the two most flagrant and abominably crooked bankruptcy administrations we have noted to say that the functioning of each might have been clean from the beginning had the referee or the court had the aid of a critical and usefully advisory institution such as the defendant association is known to us through our past contacts with it.

■ Third, following the provisions of the Bankruptcy Act, the Supreme Court has established rules of procedure, with peremptorily prescribed forms of various characters, to secure a clear and succinct presentation of the interests of the creditors to be served by the administration of any case. These forms are so clear and so constructed as to be comprehensible by any ordinarily informed and intelligent layman. Only incidentally and very occasionally does their completion with the adding of data peculiar to the individual transaction require consideration of any question of law, however trivial. They so relate to the planting and development of the case to the point where real intelligent application of the pertinent substantial law becomes a function that the referee, in receiving and entertaining the filing so prepared, is more of a minister than a judge. This feature, of which we must take notice, is of course a matter of law, as also is the next proposition, which we include in this numbered category for convenience.

■ Fourth, while one of the objects of the Bankruptcy Act is to give to the creditors the power of administering the bankrupt's estate, the referee is clothed with a very considerable discretion (General Order 13) to correct whatever abuses may creep in the preliminary processes, referred to, which (excepting the preliminary examination of the bankrupt) bring the case to the administrative activities following the election of a trustee. As the case literature shows, this discretion operates efficiently and correctively, and, we think, if wisely exercised, is almost, if not entirely, sufficient to meet any abuses of position by a credit association, attempting to function for creditors in any cause.

Only one feature of the processes leading to the election of a trustee affords real occasion, generally speaking, for practices which may be said to be of professional nature, and in this a lay creditor may take part in his individual interest without objection. We allude to the examination of the bankrupt where it is settled that no layman, or association of laymen, can take part except as the layman appears to be there representing but an individual interest. This service for two or more creditors associated for that purpose can be performed only by a lawyer representative.

Carrying in mind the four numbered propositions above stated, we proceed to answer the question before us, applied to the several differentiations which we have enumerated as 1 to 5, inclusive.

We pause to observe, first, that we have no direct or even inferential authority, upon the precise question before us, within this circuit to our knowledge. In making this statement, we do not overlook the case of In re N. J. Rose Co., No. 21397, In Bankruptcy, in our Eastern Division.[1] So far, as the facts of the Rose Case are brought to our attention in the trial brief of plaintiff, we can reach no other conclusion than that the final judgment of our colleague was correct without qualification, but we cannot be asked to be controlled by his interpretation of General Order 39 orally suggested at the hearing. We approve and follow, as to the force of General Order 39. Garrison v. Pilliod Cabinet Co. (C.C.A.) 50 F.(2d) 1035, 1036.

Neither do we overlook In re Scott (D. C.) 53 F.(2d) 89. The opinion in this case deserves great consideration, and hereinafter we propose to follow and adopt its reasoning where it is seen to be applicable, but as in the Rose Case, it is of no assistance in elucidating the main question respecting the practice of law by lay agencies.

■ Coming to the specific questions, and now considering those numbered one and two, which are treated together, we are clear that, bearing in mind the peculiar elements which enter into and control the proceeding of a bankruptcy case, none of such activities may be considered as pertaining exclusively to the domain of law practice, however it may be that transactions of this sort may be such for which, when performed by him, a lawyer might

---

[1] Decided without an opinion.

demand a professional fee. To hold otherwise, we think, would create a condition which, in many cases, might greatly advance the expense of individual creditors in asserting and perfecting claims, and securing the dividends declared thereon.

Category No. 3 should be answered in the same way, but with qualifications. Construed merely as an act of solicitation, the transaction is unethical and reprehensible when done by or in the interests of a lawyer. As a lay action it is not intrinsically obnoxious but may be so, wholly depending upon circumstances peculiarly involved in it, which may invoke the referee's supervisory power. In re Mayflower Hat Co. (C.C.A.) 65 F.(2d) 330, 331.

Likewise, No. 4 calls for a negative answer, on the precise question of the involvement of professional character, as in the case of Nos. 1, 2, and 3. If the several powers of attorney in fact are on form 20, prescribed by the Supreme Court, and none is enlarged beyond the specifications of authority therein set out, we see no merit in the contention that they may not be used separately or in aggregation in the interests of several creditors in the election of a trustee, provided there is in any situation no question of the control of the trusteeship in an interest adverse to that of the whole body of unsecured creditors, again a matter for the referee's consideration.

Going to category 5: This question must also be answered in the negative, with an important qualification. If the fee exacted is but a reasonable and customary percentage on the amount collected, we cannot see that a lay attorney in fact is practicing law in demanding it. The referee is privileged to inquire into this matter, and as a general proposition he is justified in refusing the exercise of any such representation if he finds that a fee is in contemplation of the character which justifies an inference that the prospective recipient is moved by an influence inconsistent with the position of impartiality which only should attend his act.

Always in any depicted in the five categories we have treated above, the referee, under General Order 13, is clothed, as we have intimated, with the supervisory discretion to prevent abuses, which discretion, wisely exercised in any instance, will of course be sustained by the court, as shown by the numerous authorities cited in argument. That abuses may occur is no reason why any of the acts now in consideration may be considered as of the nature of the practice at law to be done only by professional representatives. We have no assurance that devolving them, or any of them, only upon a professional man will have any material effect in preventing such abuses.

Coming now to a consideration of proposition six, we hold with the District Court of the Southern District of Michigan, adopting, without qualification, upon this specific point the reasoning of Judge Raymond in Re Scott, supra. As a matter of principle, we think that the trustee should be free of any obligation whatever, and of any accountability whatever, save to the impartial administration of the assets and to the referee alone. Of course there may be instances, as possibly in a case where every creditor with a proved claim has consented to the election of the trustee selected, when in the discretion of the referee, what the trustee may do with his emoluments may be his own concern. We are not to be construed, however, as holding that the practice calls for anything less than a very critical attitude on the part of the referee. While such disposition of a trustee's compensation cannot be held to be within the scope of law practice, for which reason to notice it may seem to be beyond the limit of our inquiry, we take it under consideration because it appears in our fact record.

We see no occasion to discuss the many cases brought to our attention. Generally speaking, those not noted deal with the discretionary power cast upon the referee by General Order 13.

We conclude with the observation that the administration of a bankrupt estate is distinctive from the usual run of justiciable questions that lay activities may well be permitted, even invited, which could not be allowed in other courts. We concur, in the main, with the approving observations, respecting the usefulness of credit agencies, of Referee Kurtz, of the Southern District of New York, in an article reprinted in April, 1935, number of the Journal of the National Association of Referees in Bankruptcy.

A decree may be prepared for our consideration, following the theories of this memorandum. As suggested above, we would have allowed herein an injunction to restrain the activities which the defendant association has abandoned since the

commencement of this case, had that abandonment not taken place. We are confining the effects of this decision to the activities of the association and its personnel, which are continued to the present time. The costs herein should be divided, i. e., each party should pay its own costs.

### Supplemental Opinion.

A finding of facts, with our decision on the issues in this case, was had and memorandum filed June 25, 1935, a day in our April term, which expired on the last Monday of October, 1935.

Five months thereafter, counsel submitted a controversy over the form of the decretal order pertinent to the findings, as set out in the memorandum; defendants offering a short, concisely worded order of dismissal, with division of costs; the plaintiffs objecting to the proposed order as inadequate and moving for a rehearing with a request for injunctive relief against practices of the association defendants in vogue when this action was begun and immediately abandoned.

The term has long since closed, and therefore right for a rehearing is now nonexistent. It also seems to the court that to decree an injunction against practices which ceased a long time before plaintiffs sought a hearing, and which, by consent, were not longer in controversy, would be to honor a moot question.

The scope of our consideration, and the subsisting fact situation, was the subject of consultation, after the hearing, in chambers with counsel for each side, the court then submitting a tentative draft of findings of fact which was discussed and edited. What appears in the memorandum is our understanding of the agreement then reached.

It is plain, from the foregoing, that we should end the instant contentions by adopting the tendered order. It is not inadvisable, however, to note that, as in the administration of a divorce controversy, for one instance, an action which ends in a discharge in bankruptcy is attended by a public interest, inherent in one prime object of the law; relief to an insolvent but honest debtor, and denial of such favor to every other. It is a matter of public concern, more so than in a case in which only the welfare of the immediate parties is involved, that the law should be economically, expeditiously, and carefully applied, and then only to those who are strictly within its purview. We think that any respectable agency which can assist in such an administration should be permitted to do so, even through activities, which may savor of practicing law in a minor way, so simple and obvious as to be within the capacity of any intelligent layman. The position we take here is to preserve that opportunity to such an organization as the defendant association, to be exercised only in bankruptcy cases that the objectives, public and private, of the law may be attained. Of course such a privilege may be abused, but that possibility weighs lightly against the advantages inherent in accepting such assistance. The referee is clothed with ample control over abuses.

We are in full sympathy with the efforts of the bar to curb unauthorized practice of the law, but it seems highly inadvisable to draw the line too finely, especially when, as here, to be technical may add to the expense of the law's administration, tending to discourage at least small creditors from asserting their rights, or to enter into proper controversies. The profession is not so strongly intrenched in public confidence that it may safely insist on exclusive right to apply, in simple matters, knowledge of the law which is equally the equipment of business men.

We sign and order entered the decree tendered by the defendants; our original memorandum on file serving as sufficient clarification of the court's position.