In the Matter of **FLEXIBLE CONVEYOR CO., Inc., an Ohio Corporation, Bankrupt.**
No. 23366.

United States District Court
N. D. Ohio, W. D.
Oct. 28, 1957.

Louis A. Schrader, Toledo, Ohio, for petitioner.

Raymond Watts, Sandusky, Ohio, for Trustee of Flexible Conveyor Co. Inc.

KLOEB, District Judge.

This matter comes before the Court on petition of Art Iron & Wire Works, Inc. for review of the Referee's order of December 5, 1956, reciting that:

"The creditors of the above named bankrupt having failed to appoint a trustee as provided in the Act of Congress relating to bankruptcy, I hereby appoint Arthur A. Zeiher of Sandusky, Ohio, trustee of the estate of said bankrupt, and fix the amount of his bond at Ten Thousand dollars."

The petition for review was filed on December 13, 1956, together with a "Summary of Evidence Pertaining to Petition for Review of Order Appointing Trustee". On July 31, 1957, the Referee filed his certificate, together with a "Referee's Memorandum on Petition for Review", giving a history of the case following the filing of the involuntary petition on October 12, 1956, together with a statement of the proceedings at the first meeting of creditors on December 5, 1956, when the trustee was appointed, including a memorandum on the law and a statement of his reasons for his actions resulting in the order under review.

The grounds of the petition for review are as follows:

"1. Your petitioner is a creditor of bankrupt herein and is aggrieved by the order of the Referee Frank C. Kniffin dated December 5, 1956 which order appoints Arthur A. Zeiher trustee of the above captioned bankrupt, a copy of which order is annexed hereto marked Exhibit A and made a part hereof.

"2. The Referee erred in respect to said order in that he failed to conduct an election for the office of trustee although an election was duly requested by duly appointed representative of this and many other creditors.

"3. The Referee erred in respect to said order in that although three names were placed in nomination for office of trustee no election was thereafter held even though this creditor through its duly authorized representative, attempted to cast its vote and the vote of several other creditors for one of such nominees.

"4. The Referee erred in respect to said order in that although a nomination was made for the office of trustee and thereafter over one hundred claims of creditors of said bankrupt were offered as votes for such nominee by the duly authorized representative of such creditors, the Referee refused to accept such votes.

"5. The Referee erred in refusing to hold an election for the office of trustee as provided in Section 44 of the Bankruptcy Act of 1938.

"6. The Referee erred in stating that to qualify as a trustee herein it would be necessary for the nominee to be an attorney and a resident of the county wherein the bankrupt conducted its business in that such attempted qualification on the part of the Referee contravenes Section 45 of the Bankruptcy Act of 1938."

The summary of evidence filed with the petition for review is quite brief and reads as follows:

"As a summary of the evidence adduced at the hearing at which the trustee herein was appointed, petitioner offers the following:

"After the examination of the bills of the bankrupt was completed, the referee announced the next order of business was the appointment of the trustee. Petitioner, through his duly appointed attorney, nominated Morris Garfinkel for the office of trustee. Thereafter the name of Arthur A. Zeiher was placed in nomination and following that the name of Melvyn J. Stauffer was placed in nomination.

"The referee thereupon stated that while he considered Mr. Garfinkel fully qualified it was his practise to insist that the trustee first

of all be an attorney and secondly that he be a resident of the county in which the business of the bankrupt was conducted.

"Thereupon the attorney and agent for the petitioner, holding proper power of attorney, voted over one hundred (100) claims of creditors in which he had proper power of attorney to vote, for Mr. Garfinkel as trustee. No other claims were voted by anyone present. The referee stated that in accordance with his policy he would not appoint Mr. Garfinkel.

"Mr. Stauffer thereupon withdrew his name as nominee and the referee thereupon announced that he would appoint Mr. Zeiher.

"This recital of evidence should also include the fact that Mr. Garfinkel is a resident of the City of Toledo within this judicial district.

"This 'résumé' of the evidence and the proceedings had relative to the appointment of a trustee in this case is tendered for the purpose of setting forth the issue as to whether or not the trustee in this case was properly appointed and whether or not the referee abused his discretion in failing to give to the properly accredited representatives of creditors the right to elect a trustee to which they are entitled under the acts of Congress relating to bankruptcy."

After the filing of the certificate on the petition for review, the petitioner filed herein its application for remand of certificate of review to the referee "with instructions to the referee to attach to said certificate a transcript of the evidence taken at the first meeting of creditors or so much thereof as is pertinent to the issue". As to this motion, it would seem that, on the questions raised on the petition for review, the admitted and undisputed facts in the record now before the court are sufficient for the determination of the questions here presented and that to grant this motion

would only prolong this case. For that reason the motion is overruled.

There is no question of law here relative to the application of the provisions of the bankruptcy law providing for the appointment or election of a trustee by creditors or jurisdiction of the Court to appoint a trustee in case of failure to appoint or elect (Secs. 44, 2, sub. a(17); 11 U.S.C.A. §§ 72, 11, sub. a(17), the qualifications of a trustee (Sec. 45, 11 U.S.C.A. § 73), or the right of creditors to pass upon matters submitted to them at their meetings by the vote of a majority in number and amount of claims. (Sec. 56, 11 U.S.C.A. § 92).

The questions here seem to be:

1. Did the Referee err in refusing to permit the name of Morris Garfinkel to be placed in nomination for trustee?

2. Did the Referee err in refusing to consider the claims on which the attorney for the petitioner had the powers of attorney and to permit their being voted for Mr. Garfinkel?

The facts upon which these questions arise appear to be that, at the first meeting of creditors, the attorney for the petitioner nominated Morris Garfinkel, an attorney, of Toledo, for trustee, and that there were also nominated Arthur A. Zeiher and M. J. Stauffer, of Sandusky, both attorneys; that counsel for petitioner offered a large number of claims on which he had the power of attorney for allowance and voting for Mr. Garfinkel; that the Referee refused to allow any of the claims and to permit them to be so voted for the reason that Mr. Garfinkel was not a resident of Sandusky, where the place of business of the bankrupt was located, and for that reason would not be appointed.

The first question is whether the Referee erred in refusing to receive the name of Mr. Garfinkel as a nominee for trustee for the reason that he was a nonresident of Sandusky, Ohio, where the business and assets of the bankrupt were located.

The only qualifications for trustee, as provided in Section 45 of the Bankruptcy

Act, are that "trustees shall be (1) individuals who are competent to perform their duties and who reside or have an office in the ·judicial district within which they are appointed".

■■ We must assume that a member of the bar of this Court in good standing, unless evidence to the contrary appears, is competent to perform the duties of a trustee in bankruptcy. Mr. Garfinkel was a resident of and had an office in Toledo, Ohio, and that qualified him on the ground of residence for the office of trustee under the law. (2 Remington on Bankruptcy 550, Sec. 1095).

In the case of Petition of Safran (In re Jaffee), 1 Cir., 1921, 275 F. 819, it was held that the Referee was not authorized to ·disapprove the election of a trustee because, though living within the district, he lived at too great a distance from the business of the bankrupt. The Court said at pages 821, 822:

"As the person appointed by a majority in number and amount of the creditors lived within the judicial district of Massachusetts and no objection was made as to his competency, the ·question is presented whether good cause was shown for the disapproval from the fact that his residence within the district was at a distance from North Adams, the domicile of the bankrupt.

"It is apparent that under sections 44 and 56 of the Bankruptcy Act the choice of a trustee is committed to the creditors, and that the· exercise of that choice is to be had at their first meeting by a majority vote in number and amount of the claims of all creditors whose claims have been allowed and are present. And under section 45 and section 2, subdivision 17 (section 9586 [11 U.S.C.A. § 11]) their choice, so far, at least, as concerns the qualifications of the appointee, is to be approved, if he is competent to perform the duties and resides or has an office in the judicial district within which he is appointed.

"The appointee's residence being within the district, he fulfilled the requirements of the statute in that respect, and the fact that he resided at Boston, rather than at North Adams, was not a disqualification, within the meaning of the statute, affecting his competency. To authorize a disapproval on grounds other than the appointee's failure to fulfill the qualifications specifically prescribed by section 45a, some failure on the part of the creditors to meet the requirements of the act leading up to the appointment (sections 44a, 56a) should appear, or some action in the choice be shown to have taken place, the effect of which would be to contravene the purposes of the act and prevent it from being carried into effect, such as interference in the election by parties having interests hostile to the general creditors. In re Callahan, [1 Cir.] 242 F. 479, 155 C.C.A. 255; Bollman v. Tobin, [8 Cir.] 239 F. 469, 471, 152 C.C.A. 347. But in this case there is nothing in the record on which to base such a ground of disapproval."

The second question is whether the Referee was justified in refusing to accept for voting the claims presented by the attorney for the petitioner on which he had the powers of attorney. The reasons given in the certificate for this action are, in substance, as follows:

1. That they were not in proper form in that none of the powers of attorney on the claims were witnessed;

2. Because it appeared · that the claims had been solicited by the Toledo Association of Credit Men, and

3. Because the statements of consideration in the proofs of claim were not sufficient for allowance.

■ 1. While it is true that Official Forms 18 and 19 of Powers of Attorney provide a blank space for a witness, it is provided in General Order 38, 11 U.S. C.A. following section 53, with regard to forms, that those forms "shall be ob-

served and used, with such alterations as may be necessary to suit the circumstances of any particular case". This question would seem to be settled in this jurisdiction by the case of In re State Thread Co., 6 Cir., 1942, 126 F.2d 296, 299, a case which was tried in the District Court at Cleveland, Ohio before Judge Jones. In that case, the Court held (Syl. 7):

" * * * that proofs and powers were not subscribed by witnesses as indicated by form prescribed by Supreme Court did not render them void, in view of General Order in Bankruptcy providing that forms prescribed should be used with such alternations as might be necessary to suit circumstances of each case, and therefore such claims could be voted at election of trustee in bankruptcy. * * * "

Apparently the question involved was one which theretofore gave the District Court and the Referees of the Eastern Division considerable difficulty, because the Court in that case said on this subject at pages 301, 302:

" * * * It was frankly admitted that this litigation was brought to us for the primary purpose of adjudication of troublesome practical questions which have long disturbed referees in bankruptcy in the Eastern Division of the Northern District of Ohio. The purpose is worthy, but the determination of controversial issues of administration for the future guidance of referees must not be reached at the expense of creditors in a case chosen for a test."

There is an extended annotation on the subject of proxies in bankruptcy cases to the case of In re Portage Wholesale Co., 7 Cir., 1950, 183 F.2d 959, 20 A.L.R.2d 189.

2. On the subject of the effect of solicitation of claims by the Toledo Association of Credit Men, the Referee stated in his certificate:

"During the past eighteen years, the undersigned had become entirely familiar with the form of the solicited claims and powers of attorney thereon which Mr. Schrader had insisted on voting for trustee in the more substantial asset cases in this Federal Court Division consisting of twenty-one counties. It appeared in this proceeding, as well as in many previous proceedings, that the claims which Mr. Schrader insisted on voting for Mr. Garfinkel had been solicited by the Credit Association and Collection Agency for which Mr. Schrader was general counsel. His name in small type, was included in the power of attorney which, in its entirety, was printed in small type in the claims. The Court promptly stated that it could not recognize the claims for voting purposes. * * * ".

Cited in support of the action of the Referee are the cases of In re N. S. Dalsimer & Co., D.C.N.Y.1932, 56 F.2d 644, and In re Deena Woolen Mills, D.C. Me.1953, 114 F.Supp. 260, which relied on the Dalsimer case. However, the Dalsimer case was in effect reversed in its holding in this respect by the case of In re Mayflower Hat Co., Inc., 2 Cir., 1933, 65 F.2d 330. In this case, the Court held (Syl. 1 and Syl. 3):

"In bankruptcy proceedings, creditors may vote at creditors' meetings by duly authorized representatives."

"It is proper to solicit claims against bankrupt, unless solicitation is done in interests of bankrupt or to enable some one other than general creditor to control trustee's election."

With reference to the Dalsimer case, the Court said at page 331:

"The Bankruptcy Act (see 11 U.S. C.A.) contemplates that creditors at their meetings may be represented by their agents, attorneys, or proxies. And creditors may vote at such meetings by their duly authorized representatives. In re

Ruhlman, [2 Cir.] 279 F. 250. A person otherwise qualified may act as trustee notwithstanding the fact that he is a creditor. In re Lewensohn, D.C., 98 F. 576. See, also, In re Callahan, [1 Cir.] 242 F. 479. Unless it is done in the interest of the bankrupt or of some one other than a general creditor to enable him to control the election, it is proper to solicit claims. In re Margolies, D.C., 191 F. 369; In re Parsons Mfg. Co., D.C., 247 F. 126; In re Lloyd, D.C., 148 F. 92. In speaking of this, Remington says: 'Indeed, it is only by solicitation of claims, oftentimes, that the nefarious operations of some improper organization for controlling the choice of trustee in the interests of the bankrupt or of some preferred creditor, can be thwarted.' Remington on Bankruptcy (3d Ed.) § 1100. *Like so many other things, whether solicitation of claims is to be condemned or not depends upon the purpose to be achieved and not upon the mere act itself.* (Italics added.)

"There is nothing in the Bankruptcy Act to prevent a creditor voting for himself for the office of trustee. On principle, it cannot be perceived why the agent of a creditor should not be permitted to vote as the creditor might. If so, he is not disqualified to vote for himself or disqualified to act as trustee because he has so voted. As the creditors who have unsecured claims that are filed and allowed may elect the trustee; may vote for themselves for the office; may authorize agents to vote; and a majority of creditors in number and amount may control the election, their choice should be recognized and upheld by the referee unless contrary to law or it appears that the trustee so elected has interests which conflict with those of the general creditors of the bankrupt estate. In re Lazoris, D.C., 120 F. 716; In re Van De Mark, D.C., 175 F. 287. The object of the law is to permit the general creditors to provide for the administration of the estate by a trustee of their own selection, and courts must have reasons that outweigh this consideration whenever the choice of the creditors is disapproved. *When creditors see fit to authorize their agent to vote for himself for the office of trustee, they are but expressly extending his power to represent them in voting. If he does vote for himself, he but exercises the power the creditors have given him.* If, as indicated in Re N. S. Dalsimer & Co., D.C., 56 F.2d 644, it be thought that one who solicits *proxies or powers of attorney in fact* should be disqualified by such action alone from voting for himself for the office of trustee, the law should be changed. We venture no opinion as to sound policy in that regard in alluding to the need for altering the law if the choice of a trustee is to be thus restricted." (Italics added.)

The question of the right of the Toledo Association of Credit Men to solicit and by proxy to vote claims of creditors sent in to them for that purpose on their own forms would seem to be settled in this jurisdiction by the decision of Judge Killits in the case of Rinderknecht v. Toledo Association of Credit Men, D.C.N.D.Ohio W.D.1935, 1936, 13 F.Supp. 555. While this was an action in equity brought in this Court by a committee of the Toledo Bar Association to enjoin the defendant from unlawful practice of law, the principle involved would seem to apply here. In that case, the Court held (Syl. 1, 2, 6, 7, 8):

"Purpose of Bankruptcy Act is to set up provisions for expeditious, economical, and just administration of estate of an honest insolvent, and notice of such purpose should always be taken. (Bankr.Act, 11 U.S.C.A.).

"As respects right of credit men's association to appear before referee in bankruptcy, court would presume that association with nation wide co-operating connections would

function reasonably and with fair degree of disinterestedness.

"Credit men's association held not engaged in 'practice of law' by offering services in presenting proofs of claim in bankruptcy proceedings, participating in election of trustee, furnishing approved forms proof of claim and power of attorney, and suggesting name of some person assumed by association to be suitable as attorney in fact.

"Credit men's association held not engaged in 'practice of law' by using powers of attorney obtained through suggesting name of some person assumed by association to be suitable as attorney in fact in bankruptcy proceedings, or otherwise in election of trustee, who was member or officer of association.

"Credit men's association appearing before referee in bankruptcy held not engaged in 'practice of law' by collecting for reasonable fee, for use of association, dividends on proven and allowed claims, representation of which was obtained by association, provided fee exacted was reasonable and customary percentage of amount collected."

The Court in its opinion, referring generally to the activities of the association in bankruptcy cases, said at pages 556, 557, 558:

"The defendant, the Toledo Association of Credit Men, which (including its active personnel) will be hereinafter referred to as the association, is a voluntary organization, with objectives well known in commercial circles, and, as such, is a member of a national organization of the same character, with subsidiaries in most, if not all, of the important cities of the country. In its activities the association cooperates with the national association as a whole, and with individual component members of the latter.

"Broadly, the question herein involves the right of the association to appear before our referees in bankruptcy; the challenge being specifically raised as to alleged activities designated in the bill as practices at law, to which allusion will hereinafter be made.

\*    \*    \*    \*    \*    \*

"Second, the place in business economy of an agency such as an association of credit men, whose objects are those professed by the defendant here. The usefulness of such an institution functioning honestly in promoting the threefold object of the law just referred to is obvious to any District Judge of much experience. Apathy of creditors, who have not only a primary but controlling interest in the administration of a bankruptcy cause before a referee or a court, is a very fruitful cause for abuses of the law, ending, sometimes, in serious frauds and discharges of unworthy insolvents. In many cases a more just administration would be applied, at least with less trouble, and most improper discharges would be prevented, were this not so. In re N. S. Dalsimer & Co., D.C., 56 F.2d 644, 647.

"Any agency which may serve to stiffen a critical attitude in creditors, individually or collectively, and to encourage an effort to aid the referee or court to reach the result which the law contemplates, deserves sympathetic consideration. We think that a presumption is justifiable that such an association, with nation wide co-operating connections, will function reasonably and with a fair degree of disinterestedness. To the extent that weak human nature may enter into the matter to weaken the presumption, the referee is clothed with full supervisory power of correction.

"From extensive connection with bankruptcy administration in 18 years of activity in this large commercial district, in both of its divisions, we select the two most fla-

grant and abominably crooked bankruptcy administrations. we have noted to say that the functioning of each might have been clean from the beginning had the referee or the court had the aid of a critical and usefully advisory institution such as the defendant association is known to us through our past contacts with it."

3. As to the statements of consideration in the proofs of claim offered not being sufficient for allowance and voting because they "did not set forth dates, consideration or instruments", some of the older cases have been cited in support of this proposition. However, it would seem that we should follow the case of Sloan's Furriers, Inc., v. Bradley, 6 Cir., 1945, 146 F.2d 757, in which the Court held (Syl. 1 and Syl. 2):

> "The allowance of claims for purposes of voting in bankruptcy is not their final allowance, and upon a determination of the validity for voting purposes, when challenged, the only question for the court is whether there was reasonable ground for the determination made.

> "The mere filing of a proof of claim is prima facie evidence of its validity, with the burden of disproving it upon the objector."

The language of the Court pertaining to the allowance of claims in that case is perhaps applicable here at pages 758, 759:

> "There is, however, upon the record, no doubt as to the existence of the debts objected to, or the good faith of the creditors asserting them. It must be understood that the allowance of claims, for purposes of voting, is not their final allowance, and that upon a determination of their validity for voting purposes, when challenged, the only question for the court is whether there was reasonable ground for the determination made. In re Rosenfeld-Goldman, Co., D.C., 228 F. 921. The mere filing of a proof of claim is prima facie evidence of its valid-

ity, with the burden of disproving it upon the objector. Whitney v. Dresser, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584. * * *

* * * * * *

> "The referee came to the conclusion that the contest over the selection of a trustee was not, in reality, a controversy in respect to Bradley at all, since high tribute was paid by the objectors to Bradley's integrity, ability and experience as a liquidating trustee,—a tribute repeated even more fulsomely, here. The referee viewed the contest as one between attorneys for representation of the trustee, and there is much in the record to support his conclusion. When the claim of the Ohio Finance Company was first presented, its representative stated that he had authority to waive a portion of the security represented by hypothecated accounts. Appellants' counsel waived objection to the claim in the belief that it would be voted in his favor. When he found that in this he was mistaken, he sought to withdraw the waiver. There was evidence also that appellants' counsel had interviewed the local manager of this creditor and had offered to nominate its attorney as trustee, and evidence that he had offered to vote his claims for Bradley if Bradley would recommend his appointment as counsel for the trustee. Nowhere in the record is this evidence controverted."

In the case of Schwartz v. Mills, 2 Cir., 1951, 192 F.2d 727, 730, 29 A.L.R.2d 1161, the Court held that a description of the consideration for the debt in a proof of claim as "money loaned and borrowed" by alleged bankrupt, and "goods, wares and merchandise sold and delivered to the said Bankrupt" at the latter's special interest and request, was sufficient. In the opinion, the Court used some language which appears applicable here, 192 F.2d at page 730:

> "Some of the older cases do speak in terms of a detailed statement,

compiled 'with meticulous care;' of the consideration for the claim. See cases cited in 3 Collier on Bankruptcy 127, 128, 14th Ed.1941. Without considering whether or not such exacting requirements can have any real meaning in the day-to-day realities of creditors' meetings, we think the better rule is that no error will lie if there was reasonable ground for the allowance. See In re Rosenfeld-Goldman Co., D.C. Mass., 228 F. 921. Hence a Proof of Claim should be held to comply with the requirement for statement of the consideration if the creditors and trustees are thereby supplied with enough information as to the circumstances giving rise to the debt to be able to test and pass on its validity, legality, and substantial accuracy."

The Bankruptcy Act provides for the allowance of claims "duly proved" upon receipt or presentation. Sec. 57, sub. d, 11 U.S.C.A. § 93, sub. d. Sec. 57, sub. a provides that the consideration shall be stated in the proof of claim. There is a blank space in the official forms of proofs of claim for such a statement. Official Forms Nos. 28, 29, 30 and 31. These forms are to be used with such alterations as may be necessary to suit the circumstances of any particular case. General Order 38. There is no specific requirement in the law or General Orders with reference to itemization of the consideration, excepting that in General Order 21(1), which requires that "a proof of claim for a debt founded upon an open account shall state when the debt became or will become due; and if it consists of items maturing at different dates the average due date shall be stated, in default of which no interest shall be allowed", which is the only penalty for not doing so.

The first business at the meeting of creditors at which a trustee is to be elected is the allowance or disallowance of claims presented. Sec. 55, sub. b, 11 U.S.C.A. § 91, sub. b. Only allowed claims may be voted at such meeting on the election of trustee or such other matters as may be submitted to creditors. Sec. 56, sub. a. If objection is made, the Court may on its own motion continue the hearing on the objections. Sec. 57, sub. d. The sworn proof of claim is prima facie evidence of the debt. Whitney v. Dresser, 1905, 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584.

Claims of secured or priority creditors may be temporarily allowed for such sums as to the court may seem to be owing over and above the value of their securities or priorities to enable such creditors to participate in the proceedings. Sec. 57, sub. e; 2 Remington on Bankruptcy, Sec. 1002. It would hardly seem reasonable to apply a more stringent rule to unsecured claims.

The trustee is required by the law to examine all proofs of claim and to object to the allowance of such as may be improper. Sec. 47, sub. a(8), 11 U.S.C.A. § 75, sub. a(8). Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part. Sec. 57, sub. k. The trustee or any creditor who may desire the reconsideration of any claim allowed against the estate may apply for an order for reconsideration. General Order 21(6).

From the foregoing, it is apparent there is ample machinery in the Bankruptcy Law and General Orders to protect estates from improper claims which may be temporarily allowed at the first meeting of creditors for the purpose of voting. It would seem that, in the interest of practical and expeditious administration of estates in bankruptcy, claims presented at the first meeting, which comply substantially with Sec. 57, General Order 21 and the Official Forms, may well be allowed, at least for voting purposes, if the name and address of the creditor and the amount of the claim are substantially as shown in the schedules, subject to objection or reconsideration. If objections are made to such claims, especially in a case where a large number of claims are involved, and there is insufficient time to consider and determine the objections, the hearing on the objec-

tions may be continued. Sec. 57, sub. d. The election of a trustee, where there is no receiver, may call for urgent action, but creditors ought not to be disenfranchised from voting their choice, if it can be avoided.

■ However, we feel that, notwithstanding the conclusions to which we have come in this matter, there has been no substantial injury done to the rights of the petitioner and other creditors represented by the attorney for the petitioner. It has now been over ten months since the appointment of the trustee. We assume most of the administration of the estate of the bankrupt has been completed, and it would serve no useful purpose to set aside the appointment of the trustee now and throw the matter open for a new election. On this point, the language of the Sixth Circuit Court of Appeals, on a similar subject, in Sloan's Furriers, Inc., v. Bradley, 146 F.2d 757, at page 759, supra, is pertinent:

"The estate of the bankrupt has now been fully liquidated, its liabilities finally determined, and its assets converted into cash,—nothing remains to be done except a distribution of the fund to creditors. We are asked to set aside the election of the trustee, and so to adjudicate, as a nullity, everything that has so far been done by him, and to throw the matter open to another fight among creditors whose claims, as voted, have now been finally without contest allowed. This would seem to be an utterly futile proceeding. True, it is, that the vindication of a principle, so salutary as freedom of a trustee from bankrupt control, might impose upon a court of equity, an adjudication wholly futile in practical aspect, but it would have to be in a case where evasion is much more clearly demonstrated than here it is, in response to challenge whose bona fides are not suspect, and requiring no approval to an unseemly contest among lawyers for trustee representation."

In this connection, we may also refer to Rule 61 of the Federal Rules of Civil Procedure, 28 U.S.C.A., which reads as follows:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

It does not appear that the interests of the petitioner have been prejudiced in this case by the order complained of or that it is inconsistent with substantial justice.

The petition for review is dismissed.