## In re SITTING.

(District Court, N. D. New York. November 22, 1910.)

1. BANKRUPTCY (§ 126*)—TRUSTEE—APPOINTMENT — DISAPPROVAL — JURISDICTION OF COURT.

Under Bankruptcy Act July 1, 1898, c. 541, § 44, 30 Stat. 557 (U. S. Comp. St. 1901, p. 3438), providing for the election of trustees in bankruptcy, and General Order 13, declaring that the appointment of a trustee by creditors shall be subject to approval or disapproval by the referee or by the judge, the judge of the bankruptcy court having jurisdiction of an estate has power to disapprove the selection of a trustee by a majority of the creditors in number and amount, where there is ground to believe that

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

his selection would operate to permit the bankrupt and his relatives interested in the estate as creditors to administer the estate.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 126.*]

2. BANKRUPTCY (§ 126*)—TRUSTEE—ELECTION BY MAJORITY CREDITORS—PUBLIC POLICY.

A bankrupt's estate amounted to only $3,500, to be divided, after paying expenses, among creditors having claims aggregating $9,000, over $7,000 of which consisted of claims said to be owing to near relatives of the bankrupt, or members of his family. At a meeting of creditors to select a trustee, the senior member of a law firm, who were attorneys for the bankrupt, presented and represented and had power of attorney for about 80 per cent. of the claimants, and claimed the right to vote the claims for M. as trustee, who had an office in the same building with or near that of such firm of attorneys, over the objection of the minority creditors. *Held,* that the election of such person as trustee was properly disallowed as contrary to public policy.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 126.*]

In the matter of bankruptcy proceedings of Ernest J. Sitting. On certificate to review a referee's order disproving the appointment of A. S. Malsan, as trustee, made by a majority in number and amount of the creditors of the bankrupt on an order to show cause. Referee's determination affirmed, appointment vacated, and new election ordered.

Sholes & Norton, for certain creditors and bankrupt.
Grant & Wager, for opposing creditors.

RAY, District Judge. It appears from the record and affidavits that the firm of Sholes & Norton are the attorneys for the bankrupt, Ernest J. Sitting, in this proceeding. This fact Mr. Sholes conceded on the argument. H. C. Sholes is the senior member of said firm. The total amount of the claims filed is about $9,000, of which some $7,000, as shown by affidavit, are filed by the father and other relatives of the bankrupt. The claim of the father is $3,632.83.

H. C. Sholes, above named, presented and represented the claims of and had power of attorney from over or about 80 per cent. of these claimants at the first meeting of creditors. He was thus enabled to control the appointment of the trustee at the creditors' meeting and insisted on voting the claims represented by him in favor of one A. S. Malsan, an attorney of Utica, who has an office in the same building with and near to that of Sholes & Norton, and did so. Grant & Wager, representing certain creditors, voted for Pascal De Angelis, who was suggested by the referee, under the circumstances, as did Watkins, Lewis & Titus, representing other creditors and claims. The estate of the bankrupt, as shown by the petition and schedules, does not exceed $3,700. The petition and schedules were sworn to before said Malsan, who took the oath to one of the claims. A large number of the claims represented by Sholes were sworn to before a notary who is a stenographer in the office of Sholes & Norton.

The referee, by order made, refused to approve the appointment of Mr. Malsan as trustee, and that refusal and order are here for review. There is also an order to show cause why such appointment made by the creditors should not be vacated.

Sholes & Norton contend that under the facts appearing the referee had no right or power to refuse to approve and confirm the selection of the majority of the creditors, the majority in number and amount. Section 2 of chapter 2 of the bankruptcy act provides that courts of bankruptcy are invested with power and jurisdiction:

"(17) Pursuant to the recommendation of creditors, or when they neglect to recommend the appointment of trustees, appoint trustees, and upon complaints of creditors, remove trustees for cause upon hearings and upon notice to them." Act July 1, 1898, c. 541, 30 Stat. 545 (U. S. Comp. St. 1901, p. 3420).

Section 44 of the act (U. S. Comp. St. 1901, p. 3438) provides:

"The creditors of a bankrupt estate shall, at their first meeting after the adjudication or after a vacancy has occurred in the office of trustee, or after an estate has been reopened, or after a composition has been set aside or a discharge revoked, or if there is a vacancy in the office of trustee, appoint one trustee or three trustees of such estate. If the creditors do not appoint a trustee or trustees as herein provided, the court shall do so."

However, General Order 13 adopted by the Supreme Court of the United States, provides that:

"The appointment of a trustee by the creditors shall be subject to be approved or disapproved by the referee or by the judge; and he shall be removable by the judge only."

While there has been an appointment of a trustee by a majority of the creditors, it is subject to the approval or disapproval of the referee, and in this case the referee has disapproved. The creditors voting for Mr. Malsan insist that he is a competent and suitable person to act as trustee and the choice of a majority in number and amount of the creditors, and that no fact or circumstance recited was sufficient to justify the disapproval. On the other hand, Mr. Grant contends, in behalf of the creditors represented by him and Watkins & Titus, that inasmuch as a large majority of the creditors favoring Mr. Malsan, including the father and a sister, are relatives of the bankrupt and were represented by Mr. Sholes, one of the attorneys for the bankrupt in this proceeding, who has been paid as such from the estate of the bankrupt to an extent at least, the selection or appointment of Mr. Malsan is improper and should not be confirmed as it would be, in effect, allowing the bankrupt and his relatives interested in the estate as creditors, to administer such estate, it might be in a manner highly detrimental to the interests of the other creditors. All the creditors of a bankrupt estate have the right to be fairly cared for in the administration of the estate. All the creditors have the right to a fair and an impartial trustee, one not under the influence of the bankrupt or of his attorney to any substantial degree, especially where there are or may be conflicting interests, questions as to claims and the conduct of the bankrupt prior to and after bankruptcy.

In the Law of Trustees in Bankruptcy, by Woodman (chapter 1, § 11), it is said:

"Eligibility of persons in collusion with the bankrupt. It is well settled that the trustee should be free from all entangling alliances, and that the courts will refuse to approve an election when there is reasonable cause to believe that collusion between the bankrupt and the trustee-elect exists, or

that the election has been managed, or controlled, or unduly influenced by the bankrupt or his attorney."

He cites In re McGill (Sixth Circuit) 106 Fed. 57, 45 C. C. A. 218, 5 Am. Bankr. Rep. 155; In re Dayville Woolen Co. (D. C.) 114 Fed. 674, 8 Am. Bankr. Rep. 85; In re Machin & Brown (D. C.) 128 Fed. 315, 11 Am. Bankr. Rep. 499; In re Cooper (D. C.) 135 Fed. 196, 14 Am. Bankr. Rep. 320; In re Rekersdres (D. C.) 108 Fed. 206, 5 Am. Bankr. Rep. 811; In re Lloyd et al. (D. C.) 148 Fed. 92, 17 Am. Bankr. Rep. 96; Matter of Law, 13 Am. Bankr. Rep. 650; Falter v. Reinhard (D. C.) 104 Fed. 292, 4 Am. Bankr. Rep. 782; In re Hanson (D. C.) 156 Fed. 717, 19 Am. Bankr. Rep. 235; In re Morris (D. C.) 154 Fed. 211, 18 Am. Bankr. Rep. 828; and other cases.

It clearly appears in this case that the appointment of the trustee was managed and controlled by one of the attorneys for the bankrupt. There is nothing to show any bad or illegal intent on his part, and the court will assume that no such intent exists or existed; but where a trustee is selected to represent an estate of only $3,500, to be divided, after paying expenses, amongst creditors having claims aggregating $9,000, over $7,000 of which are claims said to be owing to near relatives of the bankrupt, or members of the family, can a sound discretion and sound public policy approve of a trustee selected by the votes of those creditors who were represented, as here, by the attorney then in the employment and pay of the bankrupt himself in the same proceedings, specially when such attorney represented the claims of the relatives of the bankrupt or most of them? I am decidedly impressed with the negative of this proposition and think the conclusion is compelled by the great weight of authority and substantially the unanimous opinions and decisions of the courts. The referee was present at this meeting and saw such of the parties as were present and was able properly to comprehend the situation. He suggested a way out, and the opposing creditors, a minority, true, stated their willingness to accept the gentleman suggested by the referee or any person named or suggested by the referee. There is no showing that there is any special reason why the creditors should have selected Mr. Malsan or why he should desire to serve. The bankrupt was in the grocery business, and Mr. Malsan is an attorney at law. True, the bankrupt had some accounts; but these the trustee, if a layman, can collect, employing an attorney when necessary. While no harm to creditors may come in many cases, and perhaps none in this, sound public policy and an honest and efficient administration of the law, and an administration thereof commanding and inviting the confidence and respect of the commercial community and creditor classes demand that trustees be selected by creditors but not by creditors represented by the bankrupt's attorney, who naturally follow his advice and suggestions, and who may in most material matters largely control the action of the trustee. The action had, condemned by the cases, has the appearance of evil, which should be avoided. Such practice, if permitted and approved by the courts, would encourage and foster collusion between

the bankrupt and cliques of creditors and lead to trouble in many cases. However pure the motives of the attorney, it subjects him to suspicion and criticism. It was suggested on the argument that the creditors may change their attorney, or the bankrupt his, and that then the objection would thus be removed. In this I, cannot concur. Some of the cases go to that very situation, and the selection of a trustee under such conditions was disapproved.

The result is that the order of the referee disapproving the appointment of Mr. Malsan as trustee of the estate of Ernest J. Sitting is approved and affirmed and the appointment of Malsan vacated and set aside. The referee is directed to call another meeting of creditors for the appointment of a trustee in accordance with law and the rulings of the court.