**In re DEENA WOOLEN MILLS, Inc.**

No. 23965.

United States District Court
D. Maine, S. D.

Aug. 4, 1953.

an assignment for the benefit of creditors to Mayo S. Levenson, an attorney in Portland, Maine.

After a brief examination of the financial affairs of the bankrupt, it became apparent to Mr. Levenson that an assignment for the benefit of creditors was not feasible. Therefore on the same day, he notified the attorney for the bankrupt, his Boston forwarder, to that effect. On the following day, February 13, 1953, an involuntary petition in bankruptcy was filed by Maine Freightways, a creditor of Deena, and the petitioner in this proceeding, along with two other creditors.

One day later, on February 14, 1953, Mr. Robert Schwarz was appointed temporary receiver in bankruptcy, and qualified for that office on February 16, 1953.

On March 3, 1953, Deena Woolen Mills, Inc., was adjudicated a bankrupt, and thereafter on March 9th, the bankrupt filed a schedule of its liabilities, assets, and state of affairs, as ordered by the Referee in Bankruptcy. Following this, a first meeting of creditors was held on March 25, 1953, and thereafter continued to March 30th, and then to April 6, 7, 9, 10, 13, 16, and 17, on which dates lengthy hearings were held. A closely contested controversy arose over the election of a trustee of the bankrupt corporation and much of the time of the first meeting of creditors was occupied in presenting claims for provisional allowance and in voting of such claims as allowed, for the election of a trustee.

Of the claims allowed to vote, Mr. Frank M. Coffin received the majority in both number and amount, and on April 9, 1953, was declared the elected trustee of the bankrupt corporation. Four days later—namely, April 13, 1953, he filed a bond to qualify as trustee.

On April 13, 1953, prior to the qualification of Frank M. Coffin, as Trustee, the Referee in Bankruptcy granted a motion of Maine Freightways, the petitioner herein, staying his order, ordering the approval of the appointment of Mr. Coffin, as Trustee, pending review of the Referee's action in disallowing certain claims for voting.

Wilfred A. Hay, Portland, Me., Mayo S. Levenson, Portland, Me., for petitioner for review.

Frank M. Coffin, Lewiston, Me., for creditors objecting to petition for review.

CLIFFORD, District Judge.

This action comes before this Court on the petition of Maine Freightways, a creditor of the bankrupt, Deena Woolen Mills, Inc., for review of an order of the Referee in Bankruptcy approving the appointment of Frank M. Coffin, Esq., Trustee of the bankrupt estate.

The history of the case, insofar as this proceeding is concerned, begins on February 12, 1953, when Nathan Tarmy, Treasurer and a principal stockholder of Deena Woolen Mills, Inc., the bankrupt, executed

purposes and certain other rulings. A supersedeas bond was filed by a creditor, Maine Freightways, petitioning for the stay, and a temporary receiver was appointed by the Referee to take possession of the assets of the bankrupt pending a determination of the questions raised in the petition presently before this Court.

During the course of the protracted hearing at the first meeting of creditors, many objections were noted on the various rulings made by the Referee.

The petition for review sets forth twenty allegations of error by the Referee, which may be divided into three broad categories, as follows:

(1) Error in precluding attorneys Mayo S. Levenson, Robert Schwarz, Frank Linnell, and Morris Greenberg from voting claims represented by them in the election of a trustee of their choice—namely, Morris Greenberg.

(2) Error in denying motions for continuance in order to permit creditors originally represented by Mayo S. Levenson, Robert D. Schwarz, and Morris Greenberg to seek other counsel, or appear personally to vote for a trustee.

(3) Error in permitting the following claims to be voted for Frank M. Coffin, as Trustee, of the bankrupt—namely, Great American Indemnity Insurance Company—Connelly Containers Corporation—Wing's Express—Crompton & Knowles—H. F. Livermore Corp.—Crompton, Knowles, Jacquard Supply Company—Howard Bros. Mfg. Co.

Oral argument on the petition, supplemented by briefs, was had before this Court on July 10, 1953. All attorneys, who represented claims that were in issue in this proceeding, were in attendance, except Mr. Frank Linnell who represented the claims of the Tarmy Wool Stock Company, Ida Katz, and Isaac Tarmy.

■ At the outset of the hearing on this petition, question was raised concerning the standing before this Court of the petitioner, those objecting to the petition asserting that the petitioner was not aggrieved by the ruling of the Referee.

Under section 39, sub. c of the Bankruptcy Act, 11 U.S.C.A. § 67, sub. c, only *"A person aggrieved* by an order of a Referee may * * * file with the Referee a petition for review * * *."* (Emphasis supplied.) Unless the petitioner first shows itself to be "a party aggrieved", it obviously has no standing and the Court would be justified in dismissing its petition for review.

No case directly in point on this phase of the proceeding has been cited to this Court. However, in a recent case decided since 1938, a creditor whose claim was disallowed, neither side having a majority in number and amount, was held to have no standing in review. In re State Thread Co., 6 Cir., 126 F.2d 296, 301. The Court in that case, stating that the creditor therefore suffered no actual damage, said:

"upon the facts of record, Davis, in our judgment has been deprived of a mere technical and not a substantial right."

The language of section 39, sub. c of the Act, restricting the right of review to "persons aggrieved", is somewhat indefinite, but appears narrower in terms than former General Order 27, now repealed, 11 U.S.C.A. following section 53, which stated that a petition could be filed whenever "a bankrupt, creditor, trustee, or other person *shall desire* a review by the Judge". (Emphasis supplied.) Nevertheless, even before subdivision c was added to section 39 by the 1938 Act, General Order 27 had been almost uniformly construed as limiting the right of review to those persons having "a direct interest". Colliers, Vol. 2, 14 Ed. page 1479. See also in The Matter of Henry Woods Sons, Co., D.C., 279 F. 608; Forsher v. Graham, 6 Cir., 32 F.2d 654; In re Continental Bldg. & Loan Association, D.C., 232 F. 413; In re Grossman, D.C., 225 F. 1020, 1021, in which case it was flatly stated that "The only persons who could appeal by petition for review were those whose votes had been cast out."

The transcript of the hearing shows that the petitioner is a creditor of the bankrupt; that its claim was filed without objection, and allowed; and, the claim was permitted to be voted for Morris Greenberg, the de-

feated candidate for trustee of the bankrupt. Not one of the creditors, whose claims were disallowed, has joined in this petition for review, nor have they filed individual petitions. The Court also takes notice of the fact that the petition for review was brought by a creditor whose principal officer was also the attorney for the Receiver.

The petitioner contends that the office of trustee is an important one for it is the trustee who will guide whatever litigation may be necessary for the recovery of assets, which directly affects the size of any dividend the creditors may receive out of the bankrupt estate; that the petitioner joined in an "aggressive campaign" for the election of a trustee; that if the claims disqualified for voting purposes had not been so disqualified, Morris Greenberg, their designated nominee, would have been elected; and that when a majority of creditors with whom this petitioner was aligned were disqualified for voting purposes, it was relegated to the position of being made part of the minority and thereby became "aggrieved".

Upon the facts before it, this Court is of the opinion that the petitioner, standing alone, being a creditor whose vote for trustee was allowed, and whose candidate failed of election, is not an aggrieved party within the meaning of section 39, sub. c of the Bankruptcy Act. See In re Phoenix Dress Co., 7 Cir., 131 F.2d 726. Neither the petitioner nor any other party in interest asserted that the trustee chosen was inexperienced, incompetent, or lacking in legal ability to properly carry out the duties which are incidental to the office of the trustee.

In the proper administration of the estate, the creditor's only interest is in receiving as large a dividend from the estate as possible. In the case at bar, no legal interest of the petitioner was violated; its vote for trustee was allowed. The allegation on its part that it was aggrieved or damaged, without producing any evidence to show damage, other than merely becoming a part of the minority of creditors who voted for the defeated candidate for trustee, does not suffice to give this petitioner standing in this Court. At most it was indirectly affected. See Rogers v. Bank of America Nat. Trust & Savings Association, 9 Cir., 142 F.2d 128.

This ruling relative to an aggrieved party could very well dispose of the proceeding before this Court. This Court, however, will go further and decide the entire matter on its merits.

The petitioner in its brief and argument before the Court on July 10, 1953, limited its argument principally to the Referee's ruling relative to the disallowance for voting purposes of the claims represented by Mr. Mayo Levenson and Mr. Morris Greenberg. The undisputed facts in respect to those issues are as follows: On February 12, 1953, Mr. Nathan Tarmy, Treasurer of the bankrupt corporation, executed an assignment for the benefit of creditors to Mr. Mayo Levenson, as already indicated. Mr. Levenson had been recommended to the bankrupt's attorney, Mr. Gruzen, by Mr. Jean Sisson, an attorney in Boston.

Mr. Levenson testified that he had not received a list of the creditors of the bankrupt corporation, although he had requested such a list, and was told that the accountant of the bankrupt corporation would furnish a list to him. In any event, Mr. Levenson proceeded to determine the status of the bankrupt by journeying to Auburn, Maine, for the purpose of recording the assignment and examining the records in the registry of deeds, accompanied by Mr. Wilfred Hay, who was the prospective attorney for the assignee. After examining these records, however, it was apparent to Mr. Levenson, the assignee, that Deena Woolen Mills, Inc., was in such a poor financial condition that an assignment was not feasible. Accordingly, on the following day, February 13, 1953, an involuntary petition in bankruptcy was filed, at least with the knowledge of Mr. Mayo Levenson, by three creditors of Deena Woolen Mills, one of which was Maine Freightways, petitioner herein and of which Mr. Hay is the President and Treasurer, as well as its attorney.

At first, Mr. Levenson discussed with Mr. Hay the question as to whether it would be proper for him to seek the ap-

pointment as Receiver of the bankrupt. Being dissuaded from doing so, Mr. Levenson suggested that Mr. Hay speak to the Referee on behalf of Mr. Robert Schwarz, his associate in the practice of law, for the appointment as Receiver of the bankrupt. As a result of Mr. Hay's talk with the Referee, Mr. Schwarz was appointed as Receiver, and qualified as such two days later. Shortly thereafter, Mr. Schwarz petitioned the Referee for the appointment of Mr. Hay as attorney for the Receiver. The request, in his petition, was granted.

Mr. Robert Schwarz, Receiver, is associated with Mr. Levenson, the former assignee, in the practice of law in what they term "a limited association". Mr. Levenson is an attorney of some twenty-eight years' experience, while Mr. Schwarz, characterized by Mr. Hay in his argument before the Court on July 10, 1953, as having a very limited knowledge or ability in the practice of bankruptcy law, has practiced law for approximately five years. Both attorneys share the same suite, waiting room, secretaries, and telephones. Mr. Levenson, however, pays for all the overhead expenses. They have common stationery, the letterhead of which carries the name of Mayo S. Levenson, his telephone number, and the legend that he is an Attorney and Counsellor at Law, with a line thereunder followed by the name Robert D. Schwarz. Mr. Levenson turns over a large number of legal matters to Mr. Schwarz, who receives a certain percentage of fees therefrom, excluding, however, matters involving bankruptcy. Mr. Schwarz also performs certain minor duties for Mr. Levenson, for which he receives no compensation.

From February 14, 1953, the date of his appointment to March 9, 1953, a period of over three weeks, Mr. Schwarz, as Receiver, had access to the books and records of the bankrupt corporation. Mr. Schwarz admits preparing a partial list of creditors of the bankrupt as the invoices came to his office, but after the Referee had ordered Mr. Philip Willard, the Clerk of the bankrupt corporation, to file a schedule of its assets and liabilities, and statement of affairs, Mr. Schwarz turned over the invoices to Mr. Willard,

upon his request. Mr. Willard thereafter prepared a partial list of creditors and filed said list in the Clerk's Office of the United States District Court, on March 9, 1953, at 10:20 A.M.

The mill was adjudicated a bankrupt on March 3, 1953, and long before that date, Mr. Schwarz, as receiver, was active in a manner exceeding his authority and power under General Order 40 of the Bankruptcy Act, 11 U.S.C.A. following section 53. The Referee found as a fact that without the knowledge and authority of the Court, and several days before adjudication, Mr. Schwarz employed an appraiser, who submitted an appraisal under date of February 23, 1953. And in a similar manner and before adjudication, an agent of the auctioneering firm of Mr. Aaron Krock, accompanied by the Receiver, Mr. Schwarz, was permitted to lot and tag the property at the mill. As a consequence of this, the Referee received a letter from Mr. Aaron Krock, dated April 1, 1953, expressing the hope that he would be appointed the auctioneer of the bankrupt estate, in view of the fact that the property of the mill had already been lotted and tagged—"* * * with the permission of Mr. Levenson as I understand Mr. Schwarz is the Receiver." The record shows that Mr. Levenson is the attorney for Mr. Aaron Krock, and this was done by Mr. Schwarz, even though his attorney, Mr. Hay, had specifically advised him that as Receiver he was a mere custodian of the property and, therefore, without power to liquidate or sell it. Similarly, the Referee admonished Mr. Schwarz that the employment of an accountant could not be authorized until after there was an adjudication.

In addition to this, Mr. Schwarz received five letters, mailed to him as the receiver of Deena Woolen Mills, Inc., from creditors seeking information as to how to file their claims in order to participate in the distribution of the assets of the bankrupt estate. Mr. Schwarz answered each of these inquiries. In three of the five letters he enclosed proofs of claims with the name of Mr. Robert Schwarz inserted in the blank space reserved for the name of the person to whom the power of attorney was

to run. At the first meeting of creditors, Mr. Schwarz attempted to vote these three claims, plus another, for Mr. Morris Greenberg as trustee. The Referee, however, precluded him from voting the claims which totaled $3,539.68, because of his position as Receiver.

Although the record shows that some of the attorneys who participated in this proceeding also solicited claims for voting purposes, there is no evidence whatsoever that Frank M. Coffin, who was elected Trustee, or his law partners, Mr. Robinson Verrill and Mr. Leon Walker, solicited any of the claims which they attempted or were permitted to vote for Mr. Coffin, as Trustee for the bankrupt estate. Nevertheless, some of the claims voted for Mr. Coffin had been solicited by others, admittedly four by Mr. Wheeler, and at least one by Mr. Berman. There is no evidence that the remaining attorneys who voted their claims for Mr. Coffin solicited their claims. Mr. Levenson, however, solicited all of the twenty-six claims totalling $22,371.15 that he represented. He testified that he had admonished Schwarz, the Receiver, that he did not want a list of the creditors from him until the list was filed in court and made public. Nevertheless, Mr. Levenson had prepared at least 100 letters, on stationery bearing both the names of Mr. Levenson and Mr. Schwarz, under date of March 5, 1953, which was four days before the list was filed with the Clerk of the United States District Court and upon receipt of the list of creditors from Mr. Schwarz on March 9, 1953, nothing remained to be done, but to address the letters, enclose a proof of claim with the power of attorney running to Mayo S. Levenson and mail them out to the various creditors. In this respect Mr. Levenson testified:

"Well, I didn't feel that I wanted a head start and I was very careful that I didn't have a head start because I was quite familiar with the law and over a series of cases I have knowledge of what the status should be with respect to persons starting out to solicit claims. I just didn't want to be ahead of anybody, and I didn't want to be behind anybody."

Accordingly, upon the receipt of the list of creditors from Mr. Schwarz, the solicitation letters, prepared in advance, were mailed out. The evidence shows that the list of creditors was filed in Court at 10:20 A.M., on March 9, 1953, and the postmark appearing on one of the letters returned to Mr. Levenson was March 9, 1953, 3:00 P.M.

The background leading to the solicitation of claims by Mr. Morris Greenberg, the defeated candidate for trustee, begins when Mr. Levenson called Mr. Greenberg and asked him if he were willing to serve as Trustee of Deena Woolen Mills, if elected. Mr. Greenberg consented and thereafter took an interest in the case to the extent, at least, of attending some of the hearings and reading about the proceedings in the newspapers.

During the morning of the fourth day of the hearing—namely on April 7, 1953, the Referee ruled that the claims solicited and represented by Mayo Levenson could not be voted because of his association with the Receiver, Schwarz. Shortly after that ruling, a recess between 12:15 and 1:30 P.M. was had for luncheon. Late in the afternoon, shortly before adjournment, Mr. Hay pressed for and was granted a continuance to Thursday, April 9, because of previous commitments. No hearing, therefore, was scheduled for Wednesday, April 8th.

On the afternoon of April 7, 1953, after Mr. Levenson's claims had been disqualified, Mr. Greenberg called Mr. Levenson and asked how the case was proceeding. Being informed that Mr. Levenson's claims were excluded from being voted for him, Mr. Greenberg immediately went over to Mr. Levenson's office and discussed the general situation with him. While there, he conceived the idea of soliciting those same claims formerly solicited by Mr. Levenson. In this respect he testified:

"Mayo, I am in this thing now. Is there any reason why I cannot solicit those claims for myself?"

Mr. Levenson replied that Mr. Greenberg was on his own. Mr. Greenberg then

asked Mr. Levenson for a list of those claims which he represented and which had been disqualified. Mr. Levenson, indicating that he was all through with the claims, turned over his files to Mr. Greenberg, who then had Mr. Levenson's secretary type out a list of creditors, and from Mr. Levenson's correspondence, Mr. Greenberg took the names of the persons with whom Mr. Levenson had successfully dealt in receiving proofs of claims for the purpose of voting them. Mr. Levenson also informed Mr. Greenberg that he was going to send a night letter to all of the creditors whom he previously represented, whose claims he had been precluded from voting. The night letter to the creditors, after stating that he had been precluded from voting their claims, read in part, "Voting for trustee is still open and continued until 10:00 A.M., Thursday. You may execute new power of attorney to whom else you wish."

At 5:00 o'clock of the morning following the discussion with Mr. Levenson, Mr. Greenberg left for Boston, Massachusetts, to contact personally the various creditors for the purpose of soliciting their claims. Of the twenty-six claims formerly represented by Mr. Levenson, he was able to solicit sixteen and another formerly represented by Mr. Schwarz, all of which he attempted to vote for himself, as trustee, when the hearing was resumed on the morning of April 9, 1953.

It is to be borne in mind that Mr. Greenberg was the designated nominee for trustee of Mr. Levenson and his associates.

After the Referee ruled out the votes solicited by Mr. Greenberg, he pressed the Referee for a continuance of about five days so that the creditors, who had been disenfranchised, could be represented. The motion for a continuance was denied.

██ The proceedings before the Referee were extensive, especially for a first meeting of creditors. The Referee heard and observed a number of witnesses during the course of the hearing, and the findings of the Referee were made from the bench after these witnesses had presented their testimony. The rule is clear that the Referee's findings and decisions are en-

titled to extremely great weight. Under General Order 47 of the Bankruptcy Act, the findings of a Referee are not to be disturbed unless found to be clearly erroneous. General Order 47, 11 U.S.C.A. following Section 53. The Court, while scrutinizing with care the conclusions of the Referee, upon review, should not disturb these findings unless they are manifestly unsupported by the evidence. The Matter of Musgrave, D. C., 27 F.Supp. 341. The findings of fact by the Referee in this proceeding were not clearly erroneous.

Based on the facts stated herein, the Referee made the following rulings (1) That the solicitation of claims by Mayo Levenson, because of his association with Receiver Schwarz and under the circumstances which there existed, was within the prohibition of General Order 39 of the Bankruptcy Act. (2) That because of the circumstances of the case, Mr. Greenberg was so tied in with Mr. Levenson and Mr. Schwarz that the disqualification of the votes previously solicited by them serves also to disqualify the votes solicited by Mr. Greenberg. (3) That the claims held by Robert Schwarz, as Receiver, were excluded from being voted because his action was in direct contravention of General Order 39 of the Bankruptcy Act.

As a result of these rulings, Frank M. Coffin received a majority in both number and amount of the claims allowed to vote; twenty-one claims, totalling $23,216.06 voted for Frank Coffin: three claims totalling $3,820.81 were allowed to vote for Morris Greenberg, as trustee.

Because of the various rulings of the Referee, approximately forty claims were not permitted to vote. Mr. Levenson, if permitted to vote his twenty-six claims in the amount of $22,371.15, would have voted for Mr. Greenberg. Likewise, Mr. Schwarz, the receiver, if permitted to vote his four claims, in the amount of $3,539.-68, would have voted for Mr. Greenberg. Mr. Frank Linnell, if permitted to vote his three claims in the amount of $89,485.24, would also have voted for Morris Greenberg.

The petitioner makes two basic contentions: (1) that General Order 39 prohib-

its solicitation of claims only by a receiver and his attorney, and no one else; that General Order No. 39 must be strictly construed; that since Mayo Levenson was neither the receiver nor his attorney, he would not be prohibited from soliciting claims under General Order 39; and therefore the Referee was in error in excluding the claims solicited by Mayo Levenson; and (2) that assuming that Mr. Levenson was properly disqualified, the Referee was in error to include within the prohibition of General Order 39 the claims solicited by Mr. Greenberg; that Mr. Greenberg acted on his own, independently of Mr. Levenson and Mr. Schwarz, and the Referee so found; that even though Mr. Greenberg was aided in his solicitation by Mr. Levenson, that would not constitute a violation of General Order 39 and therefore the claims solicited by Mr. Greenberg should have been allowed to be voted for trustee.

The trustee and certain creditors, on the other hand, contend, (1) that Mr. Levenson and the receiver, Schwarz, were so closely associated in the practice of law that the opportunity existed for Mr. Levenson to obtain information from the receiver in advance of the general public; that whether or not any information was received, the voting of the claims solicited by Mr. Levenson would have been contrary to the policy and spirit of the Bankruptcy Act, and (2) that because Mr. Greenberg's activity arose out of and constituted an extension of the activities of Mr. Levenson and Mr. Schwarz, his efforts are tainted with the same legal defect that resulted in the disqualification of the claims solicited by Mr. Levenson and Mr. Schwarz; that because of Mr. Levenson's activities in his behalf, Mr. Greenberg would be indebted to Mr. Levenson and, thus, as trustee would not be wholly free from those entangling alliances frowned upon by the courts; and therefore the Referee was within the bounds of his legal discretion in disallowing for voting purposes the claims which Mr. Greenberg solicited and attempted to vote for himself, as trustee.

In order to place the particular facts of this case in their proper perspective, there first should be some elaboration on the legal principles surrounding the election and appointment of trustees in Bankruptcy in general.

The trustee in bankruptcy has many important duties to perform, as enumerated in Sec. 47 of the Bankruptcy Act, 11 U.S.C.A. § 75. Basically he is charged with all the duties and responsibilities of the liquidation, distribution, and administration of the bankrupt's estate. He is the most important officer in the administration of the estate and stands in a fiduciary relationship to all creditors. It is, therefore, important that "a trustee should be wholly free from all entangling alliances or associations that might in any way control his complete independence and responsibility." In re Rekersdres, D.C., 108 F. 206, 207; In re N. S. Dalsimer and Company, D.C., 56 F.2d 644.

By section 44, sub. a of the Bankruptcy Act, the creditors at the first meeting appoint a trustee. 11 U.S.C.A. § 72, sub. a. A trustee is elected by a majority in number and amount of claims of all creditors whose claims have been allowed and who are present. Sec. 56, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 92, sub. a. Although the creditors are the primary participants in the election of a trustee, their choice must be governed by the discretion of the Referee in the interest of promptness and impartiality. He presides over the election of a trustee and determines, with proper judicial discretion, what creditors have the right to vote. See Sloan's Furriers, Inc., v. Bradley, 6 Cir., 146 F.2d 757; In re Pan-American Match Co., D.C., 242 F. 995. His function in the election of a trustee is to exercise a legal discretion in expediting the election and securing an impartial trustee, and to approve or disapprove the appointment depending upon the circumstances of the particular case.

As stated In Matter of Rosenfeld-Goldman, D.C., 228 F. 921, at page 923:

"The actual administration of bankrupt estates is, under the present law, left largely to the Referees. It is the settled practice of this court not to

disturb their acts in administrative matters—of which the election of a trustee is a typical example—*unless a plain and injurious error of law or abuse of discretion is shown.*" (Emphasis supplied.) See also Sloan's Furriers, Inc., v. Bradley, 6 Cir., 146 F.2d 757.

Therefore, unless the allowance or disallowance of a claim was so plainly wrong, that an election based on the Referee's decision was manifestly unfair, his decision must stand.

Hence, the Court will look to all the circumstances surrounding the creditor's choice of trustee and will then exercise its sound legal discretion. The discretion of a Referee is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it could not be said that the trial court abused its discretion. Delno v. Market St. Ry. Co., 9 Cir., 124 F. 2d 965; Matter of Maine State Raceways, D.C., 105 F.Supp. 620.

In the light of these principles, the decision of the Referee in disqualifying the claims represented by Mr. Levenson was not clearly erroneous, as a matter of law, and was not an abuse of his judicial discretion. These principles apply to all other claims in issue before this Court.

General Order 39 of the Bankruptcy Act [1] prohibits solicitation of claims by the Receiver or his attorney, and, as the Referee ruled, it would be rendered wholly ineffective if a Receiver were permitted to do by indirection that which he is forbidden by law to do directly.

In this case, the facts clearly establish that Mr. Schwarz, the Receiver, and Mr. Levenson, the assignee, are associated in the practice of law, with Mr. Levenson being in control. Unquestionably, in view of the inexperience and lack of knowledge of

Mr. Schwarz in matters relating to bankruptcy, it would not be unnatural for him to seek aid and guidance from his associate, Mr. Levenson, a lawyer of vast practical experience in this field of the law. As a matter of fact, the actual control exercised over Mr. Schwarz is shown when an agent of the auctioneering firm of Mr. Aaron Krock, a client of Mr. Levenson, accompanied by Mr. Schwarz, while Receiver, entered the mill, and lotted and tagged the property long before the mill was adjudged a bankrupt. This unwarranted action was taken with the permission of Mr. Levenson, but without the knowledge or authorization of the Referee.

For nearly a month, Mr. Schwarz, as Receiver, had access to the records of the bankrupt and necessarily knew when papers were to be drafted and when they would be filed. It is for this very reason that the Receiver and his attorney, by having such a definite advantage over creditors, are prohibited from soliciting claims. Likewise, in view of this strict prohibition, and to avoid its circumvention, the actions of those associated with the Receiver in the practice of law necessarily must be carefully scrutinized, especially when an associate, such as in this case, participates actively in the same proceedings.

■ Although Mr. Levenson emphatically denies having aided or assisted Mr. Schwarz, and although he scrupulously avoided obtaining any information or sought to obtain any advantage over the other creditors of the bankrupt, it is the opportunity to do these things that is objectionable. Others, under like circumstances, might not be as circumspect as Mr. Levenson in this regard. The following is a particularly applicable quotation from a case involving an analogous situation:

"Equity tolerates in bankruptcy trustees no interest adverse to the trust. This is not because such interests are always corrupt but because they are always corrupting. * * * These

---

1. General Order 39, 11 U.S.C.A. following section 53: "Neither a receiver nor his attorney shall solicit any proof of claim, power of attorney, or other authority to act for or represent any creditor for any purpose in connection with the administration of an estate or the acceptance or rejection of any arrangement or plan."

strict prohibitions would serve little purpose if the trustee were free to authorize others to do what he is forbidden. * * * it is obvious that this would open up opportunities for devious dealings in the name of others that the trustee could not conduct in his own." Mosser v. Darrow, 341 U. S. 267, 71 S.Ct. 680, 682, 95 L.Ed. 927.

The test should be not what was done, but what might have been done under like circumstances.

Consequently, to give effect to General Order 39 of the Act, under the circumstances that exist herein, it must be construed so as to include within its restrictions the law associate of the receiver, who is active in the same proceedings.

■ To recapitulate and briefly summarize these activities of Mr. Levenson, the record discloses: That at the outset he was retained by the attorney for the bankrupt to be the assignee for the benefit of creditors; that the Referee found that this circumstance in and of itself would not be regarded as a prejudicial association between Mr. Levenson and the Bankrupt; that Mr. Levenson and Mr. Hay, the prospective attorney for the assignee, concluded that an assignment was not feasible; that as a result, an involuntary petition in bankruptcy was filed the next day by three creditors, one of which is Maine Freightways; that Mr. Hay is the principal officer of Maine Freightways, as well as its attorney; that Mr. Levenson suggested to Mr. Hay that Mr. Schwarz, his associate in the practice of law, be appointed Receiver; that the Referee adopted that suggestion; that immediately thereafter, Mr. Schwarz appointed Mr. Hay as attorney for him; that a client of Mr. Levenson, the Aaron Krock Auctioneering Firm, was permitted by Mr. Schwarz, while receiver, to lot and tag the property of Deena Woolen Mills, Inc., long before it was adjudicated a bankrupt, notwithstanding the fact that the attorney for the receiver had advised him that he lacked the power to liquidate and sell the bankrupt corporation; that Mr. Levenson designated Mr. Greenberg as trustee of his choice; and that Mr. Greenberg obtained the list of claims, formerly held by Mr. Levenson, from the files of Mr. Levenson, and in his presence.

In view of the foregoing, without further evidence, the Referee could well have ruled, without an abuse of his discretion, that the mere conduct and activity of Mr. Levenson, which encompassed nearly every phase of this bankruptcy case, were sufficient, as a matter of discretion, to preclude Mr. Levenson from voting the claims which he had solicited.

■ The Referee is also sustained in regard to his ruling disqualifying for voting purposes the claims solicited and represented by Mr. Morris Greenberg.

Immediately after the claims represented by Mr. Levenson were disqualified for voting purposes, Mr. Greenberg began soliciting those identical claims. Without the information which Mr. Greenberg obtained from the files of Mr. Levenson in his office, it is doubtful that Mr. Greenberg, within the next thirty-six hours, could have obtained such a substantial portion of the claims formerly held by Mr. Levenson, which having obtained, he attempted to vote for himself as trustee. The timing of the motion for a continuance made by Mr. Hay, which was granted; the sending of a night letter by Mr. Levenson to all of the creditors disqualified from voting, releasing them so that they could grant new powers of attorney; and the appearance of Mr. Greenberg in Boston, on the morning following the sending of the night letter, to solicit those creditors who had been released by that letter, could be construed as more than a coincidence.

This Court is in accord with the ruling of the Referee disqualifying for voting purposes the claims represented by Mr. Greenberg, based upon his finding that the actions of Mr. Greenberg were merely an extension of the activity of Mr. Levenson. However, in the opinion of this Court, there is another sound reason for precluding Mr. Greenberg from voting the claims he had solicited for himself, as trustee.

■ The voting for himself, as trustee, of the claims which he had solicited comes squarely within the principle announced in In re N. S. Dalsimer and Company, D.C.,

56 F.2d 644. In that case it was held that a trustee in bankruptcy, having obtained election by votes cast under powers of attorney held by himself and obtained by soliciting creditors, should be removed. Since the power of attorney in the case at bar is similar to that in the Dalsimer case, the reason given by the court for the principle is precisely in point to the case at bar.

In other words, the trustee should be completely free from any entangling alliances that might tend to hinder and impede the impartial administration of the estate.

It has come to the attention of this Court that occasionally it has been the practice for various attorneys to solicit claims in a bankrupt estate and subsequently vote those claims for themselves for the office of trustee. In order to insure a fair and equitable administration of the affairs of the bankrupt estate, this Court refuses to approve or condone such activity. The Referee shall make proper inquiry in every case pending before him to ascertain whether or not the candidate for the office of trustee has either directly or indirectly solicited claims to be voted for himself as trustee of the bankrupt estate. In such circumstances, he shall refuse to confirm that nominee for trustee, and then personally appoint a trustee of his own choice.

However high, therefore, the character and qualifications of the trustee proposed by the Levenson group may be, he is rendered ineligible for appointment as trustee for two reasons: The close relationship of Mr. Greenberg with the Levenson group; and his active solicitation of claims which he attempted to vote for himself as trustee.

It is beyond comprehension why an attempt was made by the petitioner to make an issue of the ruling made by the Referee in disallowing the votes solicited by Mr. Schwarz, while receiver. The evidence is undisputed that he, while in his capacity, did solicit claims in direct contravention of General Order 39. Therefore the Referee properly disallowed these claims for voting purposes.

Another issue raised by the petition for review, but which was neither briefed nor argued before this Court by the petitioner, concerns the claim of the Tarmy Wool Stock Company amounting to $73,785.24, sought to be voted for Morris Greenberg, as trustee, by Mr. Frank Linnell, an attorney of Auburn, Maine. Although this claim was disqualified for voting purposes, Mr. Linnell did not file a petition for review, nor did he appear at the hearing of oral argument before this Court on July 10, 1953. However, this claim is so substantial that if it had been voted for Morris Greenberg, as intended, it would have blocked the election of a trustee. This Court, therefore, feels it necessary to decide the status of that claim.

With respect to that claim, the Referee found as fact: That the sole stockholders and officers of the bankrupt corporation were Solomon Tarmy, President, Morris Tarmy, Secretary, and Nathan Tarmy, Treasurer; that they are members of the same family; that the sole stockholders and officers of the claimant corporation are the same as those of the bankrupt corporation; that the two corporations did not deal at arm's length in that Mr. Larry Suttenberg was employed as an accountant by both of them; and that the claim was subordinated either to the claim of the New York Trust Company or that of the United States Navy. Also, this claim was not included in the schedule of debts filed on March 9, 1953.

Contrary to the contentions of the claimant made before the Referee, the Referee concluded that the provisions of section 44, sub. a of the Bankruptcy Act[2] are not exclusive and therefore there can be disqualification outside of its express limitations. Consequently, on the facts as found, the Referee precluded the claim from being voted because of the inter-relationship between the two corporations.

---

2. Section 44, sub. a, 11 U.S.C.A. § 72, sub. a: "The creditors of a bankrupt, exclusive of the bankrupt's relatives or, where the bankrupt is a corporation, exclusive of its stockholders or members, its officers, and the members of its board of directors or trustees or of other similar controlling bodies, shall, * * * appoint a trustee * * *."

Prior to 1938, a bankrupt corporation's officers, directors and stockholders, who were also creditors, were generally allowed to vote in the election of a trustee, though such votes were subject to careful scrutiny. Collier on Bankruptcy, Vol. 2, p. 1637, and cases cited therein. In 1938, Section 44, sub. a of the Act was amended because Congress felt that such persons had too close a connection with the bankrupt to participate in the selection of a Trustee.[3]

The only case directly in point, giving construction to Sec. 44, sub. a of the Act, is Schwartz v. Mills, 2 Cir., 1951, 192 F.2d 727, which was not cited by either side in this controversy. But see also: West Hills Memorial Park v. Doneca, 9 Cir., 131 F.2d 374; In re Universal Seal Cap Co., D.C. E.D.N.Y.1941, 40 F.Supp. 420; In re Page Displays, Inc., D.C.S.D.N.Y.1940, 35 F. Supp. 140.

In Schwartz v. Mills, supra, it was held, with Judge Frank dissenting, that a creditor corporation, whose president and fifty per cent stockholder was also the president and fifty per cent stockholder of the bankrupt corporation, was entitled to vote in the election of the trustee. In allowing a twin corporation with identical stockholders to vote for trustee, the Court gave a strictly literal interpretation of the language of section 44, sub. a of the Act.

With all due deference to the majority opinion, this Court is constrained to concur with Judge Frank in his dissent. Although the Tarmy Wool Stock Company does not come within the literal wording of section 44, sub. a, the interpretation of the statute should carry out its patent purpose—i. e., to disqualify persons with "too close a connection with the bankrupt to make it proper that their votes should be counted in the selection of the trustee." Analysis of H.R. 12889, 74th Congress 2d Sess. (1936) 157.

In interpreting a statute, this Court adopts the views of Judge Learned Hand who stated that " 'what a judge really does is to take the language before him * * * and try to find out what the (legislators) would have done, if the case before him had been before them. * * * Strictly speaking, it is impossible to know what they would have said about it, if it had. All they have done is to write down certain words to apply generally to situations of that kind. To apply these literally may either prevent what was plainly the general meaning, or leave undisposed of what there is every reason to suppose they meant to provide for. Thus, it is not enough for the judge to use a dictionary. * * * (He) cannot suppose that what has been said * * * should leave unexecuted its own purpose.' " Schwartz v. Mills, supra [192 F.2d 733].

It is the opinion of this Court that by applying that standard for interpretation of statutes, as set forth by Judge Learned Hand, the Tarmy Wool Stock Company claim would come within the language of Section 44, sub. a. In addition to this, however, there are other reasons which seem to indicate why the majority opinion in the Schwartz case should not be followed.

The single case, West Hills Memorial Park v. Doneca, supra, cited in support of the majority's literal interpretation of section 44, sub. a does not seem in point. To the contrary, the court in that case, implying that it had power to add other exceptions to the statute, stated: "While it may be true that we could add other exceptions to the statute on equitable grounds, a point

---

3. The following excerpt is taken from the testimony of Mr. Hunt, member of the National Bankruptcy Conference which sponsored the 44a amendment: "The matter has been seriously considered at all of the various meetings of the conference. What we are trying to arrive at is the selection of a person as receiver and trustee who is absolutely impartial, who does not have, as the courts expressed it, *any entangling alliances;* in other words, a man who is, like Caesar's wife, above suspicion. You have got to have that to have an honest administration. * * * We find that, if we want to have the proper administration, we have got to divorce the bankruptcy from any influence that would tend to minimize the efficiency of administration, and we felt, after due deliberation, that this provision was essential". (Emphasis theirs.) Hearings before House Committee on the Judiciary on H.R.6439 and H.R.8046, 75th Cong. 1st Sess. 94–95.

we do not decide, we think there are no such grounds here." West Hills Memorial Park v. Doneca, 9 Cir., 131 F.2d 374, 376. There were no equitable grounds because the claimant, the bankrupt's attorney, was dead and therefore there would be no way in which he might take advantage of anyone.

Moreover, the Court's failure to adopt a broad view of Section 44, sub. a seems to indicate a departure from the rationale of In re V. Loewer's Gambrinus Brewery Company, 2 Cir., 167 F.2d 318 (cited by those objecting to the petition for review), where the Court held, in the absence of any applicable statute, that the claim of a twin corporation, having identical stockholders, should be subordinated to the claims of other creditors. See 65 Har.L.R. 1241.

The relationship of the two corporations in the case at bar is identical to that of the two corporations in the Brewery case, supra. The test applied in the Brewery case was whether the failure to subordinate will work an injustice, will not be fair and equitable to other creditors, and will result in a violation of rules of fair play and good conscience. In applying that test, without deciding that the claim of the Tarmy Wool Stock Company should be subordinated, it should not be treated upon a parity so far as voting for a trustee is concerned. As Judge Frank stated: "Subordination is indeed harsh. Far less should be needed to penetrate such tissue-paper insulation as we have here, when (1) voting only is in issue and (2) we have a statutory provision—the 1938 Amendment of Section 44, sub. a, 11 U.S.C.A. § 72, sub. a—which aims to prevent those controlling the bankrupt from voting for a trustee." Schwartz v. Mills, 2 Cir., 192 F.2d 727, 732. Otherwise, to have allowed the Tarmy Wool Stock claim to have been voted, the bankrupt, through the claimant corporation would, as a practical matter, have controlled the election of the trustee in this case, something which the courts, under these circumstances, have traditionally prohibited. In re Sitting, D.C., 182 F. 917; In re Rekersdres, D.C., 108 F. 206; In re Hanson, D.C., 156 F. 717; In re Bloom-

berg, D.C., 48 F.2d 635, and many other cases cited therein.

The ruling of the Referee on this matter is therefore not plainly erroneous as a matter of law, nor was it an abuse of his discretion. The ruling was consistent with the policy and spirit of section 44, sub. a of the Act, prohibiting such claims from being voted for Trustee.

The Court also concludes that the Referee did not abuse his discretion in precluding that claim from being voted, on the further ground, that, having found the claim to have been subordinated to another claim, determination of the rights of this claimant to participate in the proceedings could not be made without undue and unreasonable delay in the selection of a Trustee. Sloan's Furriers, Inc., v. Bradley, 6 Cir., 146 F.2d 757; Matter of Pan-American Match Company, D.C., 242 F. 995.

Issue is raised in the petition for review concerning seven claims which, as the petition alleges, the Referee permitted to be voted for Mr. Frank Coffin as trustee. The allegation in the petition concerning two of those claims—namely, Crompton, Knowles, Jacquard Supply Company, and Howard Brothers Manufacturing Company, is obviously incorrect in that the record discloses that those claims were disallowed for voting purposes.

Each of the claims of Connelly Containers Corporation, Wing's Express, H. F. Livermore Corporation, Crompton & Knowles Loom Works, were objected to because, it is asserted, the claims were not sufficiently supported by an itemized account. An additional objection was made to the H. F. Livermore claim on the ground that the person executing the proof of claim did not state that he was executing it on behalf of the corporation or in what capacity he executed it or that he was duly authorized to execute it.

■ It is well established that claims in bankruptcy must be liberally construed. They need not be pleaded with the technical accuracy required in a common law declaration. Collier on Bankruptcy, Vol. 3, p. 120 and cases cited therein. Only a prima facie

case need be established for the claim to be allowed for voting purposes.

The claims in dispute clearly comply with section 57 of the Bankruptcy Act, 11 U.S. C.A. § 93. The claims were sufficiently itemized: Wing's Express, amounting to $4,636.23, in that it stated that the charges were for trucking transportation, giving the dates and amounts for each item, along with a code number; Crompton & Knowles Loom Works, amounting to $646.58, was for loom supplies and maintenance parts, giving the date and amount of each charge, together with the credits allowed; H. F. Livermore Corporation, amounting to $1,- 336.09, stating that all charges were for loom supplies and maintenance parts giving the date and amount of each charge.

The books and records of Connelly Containers Corporation were destroyed by fire on January 24, 1953, and, therefore, copies of invoices or other substantiating documents could not be attached to its proof of claim. An affidavit was filed with these proofs verifying these facts.

The proof of claim of the H. F. Livermore Corporation sets forth that the signer thereof, Mr. John Manning, is an officer of the corporation and that he was duly authorized to execute the proof of claim.

These claims, therefore, were properly allowed by the Referee for voting purposes and no abuse of discretion was shown with respect thereto.

Mr. Coffin has a majority in both number and amount of those claims properly allowed by the Referee to be voted for the office of trustee. It is therefore unnecessary to decide the status of the claim of the Great American Indemnity Company.

The issues raised in the petition, but neither briefed nor argued by the petitioner relating to the claims of Ida Katz amounting to $2,000, and Isaac Tarmy amounting to $13,700, also need not be decided. Even if these two claims, which were subordinated as stated, were permitted to be voted for Mr. Greenberg, as trustee, and were added to those allowed and voted for him, Mr. Frank Coffin would still have a majority of votes both in number and amount for the office of trustee.

Objection was made to the refusal of the Referee to grant motions for continuances in order to permit creditors originally represented by Mayo Levenson, Robert D. Schwarz, and Morris Greenberg to seek other counsel, or to permit these creditors to appear personally to vote for a trustee. The Referee did not abuse his discretion in denying those motions in view of the principles stated herein, and the cases cited in support thereof.

This Court, therefore, concludes that the findings of fact and rulings of law as made by the Referee are not plainly erroneous and no abuse of discretion was shown.

It is, therefore, ordered, adjudged, and decreed, that the findings of fact and rulings of law, as made by the Referee and challenged by the petition for review, be and hereby are

Affirmed.