## In re BERRY & MOSER CONST. CO., Inc.

### No. 23766.

United States District Court
D. Maine, S. D.
Sept. 8, 1953.

450

Wilfred A. Hay, Portland, Me., for trustee.

I. Edward Cohen, Portland, Me., for petitioner.

CLIFFORD, District Judge.

This action comes before this Court on the petition of Mr. Christian G. Kragelund for review of an order of the Referee in Bankruptcy approving and confirming the sale of the bankrupt estate of Berry & Moser Construction Company, Inc.

The facts briefly stated are these: The petitioner, for over a period of thirty-six years, has been engaged in the real estate business in the City of Portland, Maine, and vicinity. He has acted not only as real estate agent generally, but has bought and sold real estate on his own account as well. The petitioner has also, on many occasions, testified in our State Courts relative to land values in this area.

On November 9, 1952, he read in the Sunday edition of the Boston Herald an advertisement announcing the public sale of said bankrupt estate, which read in part that "valuable real-estate—two frame tenement houses and approximately 10,000 square feet of land" would be sold on Wednesday, November 12, 1952. The advertisement also stated that the premises would be open for inspection on Tuesday, November 11, 1952, from 10:00 a. m. until 4:00 p. m.

Although the petitioner attended the auction and was the successful bidder for the property in question, he did not inspect it until after the sale had been completed.

The auction was held, as advertised, at the Main Street office of the bankrupt, located in South Portland, Maine, within sight of the premises in question which were located approximately 800 or 1,000 feet distant.

The petitioner arrived at the site of the auction about 10 minutes before it commenced, accompanied by a Mr. Burns, another real-estate dealer.

Circulars describing the various items to be sold and the terms and conditions of the sale were freely distributed among the one hundred or more individuals present. The petitioner testified, however, that he did not receive any of the circulars herein mentioned.

Certain other property of the bankrupt was sold by the auctioneer, part of which the petitioner purchased before the property here in question was offered for sale. Following this, the auctioneer announced he was prepared to sell "two tenement houses as a single lot". He then stepped outside of the office and pointed out the two houses in question. The petitioner inquired if there were two houses, or only one, because the smaller house was somewhat obscured by trees and brush. After the petitioner was apparently satisfied that there were two houses, the auctioneer then returned to the office of the bankrupt where spirited bidding began.

The petitioner first bid $2,000. Three or four other persons were bidding for it also. Finally, after a bid of approximately $3,800 was made, the petitioner bid $4,000 and his bid was accepted by the auctioneer, and the

petitioner gave his check in the sum of $1,000 in part payment thereof. The purchase price of $4,000 was $300 less than the appraised value placed thereon by a very competent Court appointed appraiser.

Shortly thereafter, the petitioner accompanied by Mr. Burns, inspected the property he had purchased. Regarding this phase of the case, the petitioner testified:

"I had better go and look at the houses and see what they look like."

Questioned as to why he also had Mr. Burns inspect the property, he answered:

"Well, I came out with him and if we were buying merchandize we wanted to see what we were buying. That's all."

The Referee found that the buildings were unfinished and unfit for habitation; that the property consisted of two shells of buildings; that they appeared to have been moved from some other location onto this land; that the interior was not finished and there were no electrical, water, nor sewer connections.

The petitioner, after inspecting the buildings and having found them to be in the condition as above stated, returned immediately to Portland and stopped payment on the check given by him to the auctioneer.

The Referee was critical of the manner in which the buildings were described in the advertisement and found that the advertisement in the instant case should have directed the attention of potential purchasers to the fact that the buildings were unfinished and unfit for habitation.

Conversely the Referee made pointed reference to the fact that the petitioner had been in the real estate business for a number of years, was often employed as an appraiser of real property and was, by his own admission, thoroughly familiar with real property values in the vicinity of Portland and South Portland. Notwithstanding these facts, the petitioner, made no effort to inspect the property at any time prior to November 12, 1952. And on the day of the auction, the petitioner, while accompanied by Mr. Burns, had ample time to inspect the property before it was offered for sale. He did not, however, avail himself of this opportunity until the sale had been completed.

The Referee confirmed the sale for two reasons: (1) the selling price was less than the appraised value of the property, and (2) the conduct of the petitioner was such that he was estopped from complaining that he was misled by the advertisement and by the statements of the auctioneer.

The petitioner contends that the advertisement describing the real estate in controversy was inaccurate and misleading; that there was no obligation on the part of the petitioner to inspect the property before the auction; that the petitioner could, and in this case actually did, rely upon the statements of the auctioneer; that as a result of the advertising and statements, the petitioner was misled and thereby caused to bid a sum greatly in excess of the value of the property; and that, therefore, the sale of the property should not be confirmed.

The Trustee, on the other hand, contends that the sale was widely advertised in newspapers and by circulars; that in accordance with the advertisement, the property to be sold was open for inspection on the day before the sale from 10:00 a. m. to 4:00 p. m.; that the petitioner was a person of long real estate experience in this area; that the sale was well attended and the bidding was spirited; that the property in question was sold to the petitioner for a price less than its appraised value; and that, therefore, the sale should be confirmed.

 The legal principles relative to the confirmation of a sale are well-established. Briefly stated, they are as follows: The grant or denial of confirmation of a sale by a Referee is, to a great extent, a matter of business administration and practical management, necessarily involving the discretion of the Referee. In this respect, the court "has a wide margin of action, mainly due to the purely administrative element involved." Collier on Bankruptcy, 14th Ed. Vol. 4, p. 1580. Collier further states, "This broad measure of discretion necessarily tends to limit the chances of success upon a review or appeal

452

from the order approving or disapproving the sale. Not only is an abuse of discretion required (citing many cases), but in weighing what constitutes an abuse the reviewing court will confine its intervention to what it feels to be a 'very extreme case'." Collier on Bankruptcy, 14th Ed. Vol. 4, p. 1580.

In support of this last statement, Collier cited In re Shea, 1 Cir., 126 F. 153, wherein it was stated: "* * * when a sale is made subject to confirmation, no title vests until it is confirmed. Under such circumstances, it is all the more difficult for an appellate tribunal to interfere with the exercise of the discretion of the court of the first instance. If a judicial tribunal authorized to make a judicial sale expressly reserves the right to approve or disapprove, it certainly would require a *very extreme case* to justify some other tribunal in injecting its own discretion." (Emphasis supplied). See also Jacobsohn v. Larkey, 3 Cir., 245 F. 538, L.R.A.1918C, 1176.

Assuming the Referee was correct in his conclusion that the newspaper advertisement was inaccurate and misleading, and notwithstanding his finding that the auctioneer at the sale referred to the property in question as "two tenement" houses, the basic issue, in view of the principles stated herein, is whether or not the Referee abused his discretion in confirming the sale of the bankrupt estate.

█ Discretion is abused when the judicial action is arbitrary, fanciful, or unreasonable. Delno v. Market St. Ry. Co., 9 Cir.; 124 F.2d 965; Matter of Maine State Raceways, D.C., 105 F.Supp. 620; Matter of Deena Woolen Mills, Inc., D.C., 114 F.Supp. 260.

█ Considering the overall aspects of this case, this Court is of the opinion that the petitioner has not shown that the action of the Referee was arbitrary, fanciful, or unreasonable, and therefore the petitioner has not shown that the Referee abused his discretion in this matter. This is not such a "very extreme case" as to justify a denial of confirmation.

It is therefore Ordered, Adjudged and Decreed that the order of the Referee approving and confirming the sale of the bankrupt estate of Berry & Moser Construction Company, Inc., be and hereby is

Affirmed.